THE STATE ex rel. GUENTHER, State Treasurer, vs. MILES, County Treasurer.

*May 13 — June 4, 1881.*

COUNTY TREASURER. *(1) His duty to pay fines to state treasurer. (2) Duty as to transmitting statement. (3) Forfeited recognizances.*

1. Under the constitution and laws of this state, it is the duty of each county treasurer to pay into the state treasury the amount of all fines collected in his county for breaches of the penal laws, after deducting two per cent. thereof for his fees (Const., art. X, sec. 2; R. S., sec. 719); and the provision in sec. 3310 for deducting expenses incurred by the county relate only to the *forfeitures* spoken of in that statute.
2. It is the duty of each county treasurer to make and transmit to the state treasurer the verified statement required by subd. 5, sec. 715, R. S., whether he has any moneys collected for fines, etc., or not.
3. Moneys collected on *forfeited recognizances* in criminal cases belong to the county.

The state treasurer filed his petition in this court, stating and alleging that, during the year 1880, the county treasurer of Rock county, the respondent, received certain sums of money for "licenses, fines and penalties," payable to the state

treasurer, and that, upon demand, he had failed to transmit to the state treasurer a statement thereof, or to pay over such money to him as required by R. S., 252, sec. 715, subd. 5. A writ of *mandamus* in that behalf, to such county treasurer, was prayed. Thereupon an alternative writ of *mandamus* was allowed and issued, commanding the respondent to make the return required by the statute, or show cause to the contrary. The respondent made return to the alternative writ, admitting that he had not transmitted such statement to the state treasurer, nor paid over to him any moneys received for fines, etc. He also admitted that, during the year 1880, he had received from the district attorney, sheriff, clerk of the circuit court, and justices of the peace of his county, a little more than $2,400, being the proceeds of fines for breaches of the penal laws imposed in said county, and collected by those officers respectively. He then alleged that all of the money so received by him for fines had been absorbed by the expenses of the prosecutions in which such fines were imposed and collected, and which the county had paid. He also stated that during such year he had received $400 collected on forfeited recognizances in criminal cases. The attorney general interposed a general demurrer to the return.

*The Attorney General*, for the plaintiff.

*J. W. Sale*, for the defendant.

LYON, J. The constitution provides that the clear proceeds of all fines collected in the several counties for any breach of the penal laws, shall constitute a part of the school fund of the state. Article X, sec. 2. The statute provides that it shall be the duty of the county treasurer to transmit to the state treasurer, at the time he is required by law to pay the state taxes, a particular statement, verified by his affidavit indorsed upon or attached thereto, of all moneys received by him during the preceding year, and which are payable to the state treasurer, for licenses, fines, penalties, or on any other account,

and at the same time pay to the state treasurer the amount thereof after deducting the legal fees." R. S., 252, section 715, subd. 5. The legal fees which the county treasurer may retain out of such moneys, is two per cent. thereof. Section 719. No deduction for the benefit of the county can lawfully be made by the county treasurer from the fines paid to him, unless the same is authorized by law. It is for the legislature to determine what deductions are to be made, and not the county treasurers or the county boards of supervisors. Even the power of the legislature in this respect is limited, as appears from the cases of *Lynch v. The Steamer Economy*, 27 Wis., 69, and *Dutton v. Fowler*, id., 427. To permit each board of supervisors to determine for itself, or each county treasurer for himself, what expenses shall be deducted from fines collected, would be to introduce inextricable confusion. Under such a system, there would be no fixed, certain rule by which the " clear proceeds " of fines could be determined; or, what is very probable, there would be no such "clear proceeds " left for the school fund. The system would be unjust and intolerable, and its practical effect would be, doubtless, to dry up one of the sources which the constitution has ordained to replenish and increase the school fund of the state.

The legislature has provided for no deduction from such fines except two per cent. thereof, which the treasurer may retain. Hence, under existing laws, the clear proceeds of fines received by the county treasurer is ninety-eight per cent. thereof, which must be paid into the state treasury for the benefit of the school fund. See *People ex rel. Board of Education of Detroit v. Treasurer of Wayne Co.*, 8 Mich., 392; *Woodward v. Gregg*, 3 G. Greene (Iowa), 287. The respondent probably believed it his duty to retain these fines, under section 3310, R. S. But that section applies only to *forfeitures*, as distinguished from fines. See section 3294. The return does not show that any forfeiture has been received by the respondent. Hence, if the section is a valid enactment (of

which there is some doubt), still it does not aid the return or affect the case. Moreover, it is the duty of each county treasurer to make his verified statement to the state treasurer pursuant to the statute, whether he has any moneys collected for fines, etc., or not. If he has not, he should state the fact and verify it. In no other way can the state treasurer know officially that all the moneys from these sources, belonging to the school fund, has reached the treasury of the state. Hence, even though the respondent had no moneys in his hands from such sources, still the return to the alternative writ would be demurrable, because it admits his failure to transmit such verified statement to the state treasurer.

The statute provides that moneys collected on forfeited recognizances in criminal cases shall be paid into the county treasury. We are aware of no constitutional or statutory provision which requires the county treasurer to pay it over to the state treasurer. We conclude, therefore, that moneys collected from this source belong to the county.

It follows from the foregoing views that the demurrer to the return must be sustained. The respondent has leave to amend his return at any time within sixty days.

*By the Court.* — So ordered.