## THE STATE vs. DE LANO.

*September 9 — September 29, 1891.*

*Constitutional law: Game laws: Payment of part of fine to informer: Excessive fines.*

1. That part of ch. 351, Laws of 1891, which provides that two thirds of the fine imposed for a violation thereof shall be paid to the informer, and one third covered into the school fund, is valid. The words "clear proceeds" in sec. 2, art. X, Const. (providing that the *clear proceeds* of all fines collected shall be set apart as a school fund), mean the net proceeds, after making the deductions provided for by law.

2. Ch. 351, Laws of 1891,— being "an act to secure the better preservation of game," and providing that the punishments for violations thereof shall be by fines not less than $50 and not exceeding $100 (in some cases not exceeding $75), or by imprisonment in the county jail for not less than thirty days (in some cases for not less than sixty days), or by both such fine and imprisonment, and the costs of prosecution — does not contravene sec. 6, art. I, Const., prohibiting excessive fines and cruel and unusual punishments.

REPORTED from the Circuit Court for *Manitowoc* County.

Defendant was convicted in the circuit court of Manitowoc county of having killed a wild duck in said county on the 24th day of May, 1891, in violation of sec. 1, ch. 351, Laws of 1891, upon the complaint of one Hinrichs. A motion in arrest of judgment was made, on the ground that said ch. 351 was unconstitutional and void; whereupon, upon defendant's request, the circuit judge reported the case to this court, and submitted the following questions of law for decision:

"*First.* Is that part of ch. 351, Laws of 1891, which provides for punishment for the offense charged in the complaint by fine, and gives two thirds of the fine to the informer and one third to the school fund, valid and constitutional?

"*Second.* Shall defendant's motion in arrest of judgment be sustained or overruled?"

The cause was submitted for the defendant on the brief of *J. D. Markham,* and for the state on that of the *Attorney General* and *J. M. Clancey,* Assistant Attorney General.

WINSLOW, J. The defendant claims that ch. 351, Laws of 1891, is unconstitutional and void, because — *First,* it contravenes that part of sec. 2, art. X, of the constitution of Wisconsin, which provides that "the clear proceeds of all fines collected in the several counties for any breach of the penal laws . . . shall be set apart as a separate fund, to be called the 'school fund.'" *Second,* it contravenes sec. 6, of art. I, of the constitution, which provides against the infliction of excessive fines and cruel and unusual punishments.

I. This squarely presents the question as to the power of the legislature to provide that part of a fine inflicted for a breach of the penal laws shall be paid to an informer. In *Lynch v. The Steamer "Economy,"* 27 Wis. 69, the effect of the decision was to sustain such power; but an examination of the case shows that the point was not raised or argued. It was "assumed, rather than decided," as the present chief justice remarked in *Dutton v. Fowler,* 27 Wis. 427. In this last-named case the legislature had attempted to give the whole fine to an informer, which attempt, this court held, was clearly a violation of the constitution. In *State ex rel. Guenther v. Miles,* 52 Wis. 488, the question presented was whether the county treasurer could deduct and withhold, in his accounting with the state treasurer, from the fines which had been paid to him, the expenses of the prosecutions which the county had paid; and it was held that he could not do so, but must account for the full amount of fines received by him, except two per cent. thereof, which the law allowed him for his legal fees. His

right to retain the two per cent. was not questioned. We have been referred to no other cases which touch upon this subject, and we feel at liberty to investigate the question as practically a new one. Really the question simply is, What is the meaning of the words "clear proceeds," as used in the constitution? That it does not mean "entire" proceeds is, we think, too clear for argument. "Clear" implies that something is to be or may be deducted, so that the balance is "clear" from all charges or demands. It seems to us that the word "clear" is here used in the sense that it is frequently used colloquially when we speak of the "clear profit" in a business transaction, meaning the "net profit" after all expenses or losses are deducted. Obviously, if this is the meaning of the word in this connection, it was contemplated that there would be power resting somewhere to provide for and define what deductions from the gross fine could properly be made. If that power exists, and we hold that it does, it must rest in the legislature, as said by Mr. Justice LYON in *State ex rel. Guenther v. Miles,* 52 Wis. 488.

This view of the intent of the framers of the constitution in using the words "clear proceeds" is strengthened when we consider that the system of paying a moiety of fines in many penal actions to informers was in frequent use in England from very early times, and has been quite generally adopted in this country. Bac. Abr. tit. "ACTIONS QUI TAM;" 3 Bl. Comm. 160.

It is not unreasonable to suppose that the words "clear proceeds" were intended to provide for just this contingency, so that the legislature might authorize a part to be paid to the informer for the purpose of securing a better enforcement of the law. It is quite evident that, if it is not made an object for some one to prosecute, many salutary laws would never be enforced, because no one would be interested in seeing them enforced.

The State vs. De Lano.

The large proportion of the fine which under this law is to be paid to the informer, viz., two thirds, is sharply commented on by the defendant's counsel, and it is said that if the legislature can direct that two thirds of the fine be paid to the informer, it can also provide that ninety-nine per cent. be paid to the informer, and one per cent. to the school fund.   The percentage given to the informer by this statute certainly seems large, although under the old English laws before mentioned a moiety seems generally to have been the informer's share; and the difference is not great.   Doubtless, should the legislature grant so large a percentage to the informer that the sum left for the school fund becomes merely nominal, this court would feel obliged to correct the evil, for in such a case it would be apparent that the constitution was evaded, and the same result practically obtained as was intended in the law considered in the case of *Dutton v. Fowler*, 27 Wis. 427.

II. As to the proposition that this law contravenes the constitutional provision prohibiting excessive fines or unusual punishments, we have simply to say that we do not so regard it.

It follows that the first question submitted by the circuit judge must be answered in the affirmative; and, as a necessary result from this answer, the second question must be answered: "The motion must be overruled."

*By the Court.*— Ordered accordingly.