92   59
98   92

## Wytheville.

### The Southern Express Company v. Commonwealth of Virginia, at the relation of James A. Walker.

#### August 1, 1895.

1. Constitutional Law—*Sec. 1220 of Code Constitutional—Fines—Forfeitures.*—Section 1220 of the Code, imposing a forfeiture of not less than $100 on express companies and others for excessive charges, one-half of which is given to the informer, is not in conflict with sec. 7 of Art. VIII. of the Constitution of the State. The fines mentioned in the Constitution are the fines imposed by law as a punishment for crime, and do not include forfeitures recoverable in a civil action. But even if such forfeitures are embraced within the constitutional provision, the Legislature has power to give one-half to the informer as expense of recovery. The fine dedicated to the Literary Fund is the State's part of the recovery.

2. Constitutional Law—*Legislative Discretion—Maximum Fines—Excessive Verdicts.*—The imposition and regulation of fines is within the discretion of the Legislature, and its discretion will not be questioned by the courts except where the minimum penalty is so excessive as to shock the sense of mankind. Section 1220 of the Code is not in conflict with sec. 11, Art. I., of the Constitution, forbidding excessive fines; and the fact that no *maximum* fine is fixed by the section does not render the act unconstitutional. Excessive verdicts are under the control of the courts.

3. Constitutional Law—*Operation of Amendment VIII. of Constitution of the United States.*—Art. VIII. of Amendments to the Constitution of the United States has reference solely to the powers exercised by the Government of the United States, and does not apply to the powers exercised by the State governments.

Error to a judgment of the Circuit Court of Wythe county, rendered February 15, 1893, in an action of trespass on the

case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This was an action of trespass on the case, instituted in the Circuit Court of Wythe county, in the name of the Commonwealth of Virginia, suing at the relation of James A. Walker, against the Southern Express Company, to recover the forfeiture denounced by section 1220 of the Code for excessive charges on a small package of papers sent by the relator, at Wytheville, Va., to Wm. H. Davis, at Pulaski City, Va. The package did not weigh more than one-half of an ounce, the distance to be carried was twenty miles, and the price charged was one dollar. No question was made about the excess of the charge over the rate fixed by law. The plaintiff laid his damages at five hundred dollars; the jury allowed him two hundred, and judgment was rendered accordingly. The only questions submitted to the court were the constitutional questions disposed of in the opinion. The declaration was demurred to on the ground that the act under which it was framed was unconstitutional, but no other ground is assigned. The declaration was brief, and is here given in full:

" Circuit Court for Wythe county, to-wit: Feb'y rules, 3d Monday, 1890.

" The Commonwealth of Virginia, at the relation of James A. Walker, complains of the Southern Express Co., of a plea of trespass on the case for this, to-wit:

" That the Southern Express Company is a corporation, incorporated by the laws of Virginia, and as such it has and exercises the right or privilege of transporting and conveying any articles and things, by or upon certain railroad trains for the purpose of receiving compensation for the same; that the

Opinion.

Southern Express Co., thus exercising its rights and privileges, transported and conveyed from the said James A. Walker, at Wytheville, Va., to Wm. H. Davis, at Pulaski City, Va., the whole distance being within the State of Virginia, one certain package or bundle of vouchers, receipts and other papers, (other than coin, bullion, bank notes, bills of exchange, promissory notes or other evidences of debt,) weighing less than five pounds, to-wit, one pound.

" And the said defendant having received for transportation the said package or bundle on a certain day, to-wit, the —— day of January, 1890, made off its bill and charged the said James A. Walker an excessive sum of money as compensation for transporting or conveying the said package or bundle, to-wit, the sum of one dollar.

" And he, the said James A. Walker, being so charged the excessive sum aforesaid, to-wit, the sum of one dollar, had to pay, and did pay, the same to the said company, contrary to the statute for such cases made and provided, to the damage of the said plaintiff $500.00.

" And therefore she brings her suit."

" WALKER & CALDWELL, p. q."

*Blair & Blair*, for the plaintiff in error.

*Walker & Caldwell*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

There is but a single question involved in this case, and that relates to the constitutionality of section 1220 of the Code of Virginia. Its validity is assailed by the plaintiff in error on several grounds.

The first and main objection is based on sec. 7 of Art. VIII. of the Constitution of the State, which sets apart as a

permanent and perpetual Literary Fund, among other resources, " all fines collected for offences committed against the State." It is contended that the forfeiture provided for in sec. 1220 is embraced by the term " fines " so set apart by the Constitution, and that the gift of one-half thereof for the use of the informer is a misappropriation or diversion, to that extent, of a fund which has been dedicated to the Literary Fund, and that the statute is therefore in conflict with the fundamental law, and invalid. This compels an enquiry into the meaning of the words quoted from the Constitution. What " fines " are here intended or comprehended ? The answer is found in the language of the Constitution itself. They are " fines collected for offences against the State," that is, fines imposed by law as a punishment for crime. Fines constitute in whole or in part the punishment for many of the smaller offences at common law, and also for many offences created by statute, and these are the " fines " which the constitutional provision was designed to cover. It comprehends only those fines which are affixed as penalties for crime and are recoverable upon the conviction of the offender, and does not embrace those pecuniary penalties or forfeitures provided by statute, that a popular or *qui tam* action (which is a civil action) may be brought to recover. Such is the forfeiture prescribed by section 1220, and which was sued for and recovered in this case.

Section 1215 prescribes the rates which an express company may charge, and section 1220 provides a pecuniary forfeiture for their violation. The *gravamen* of this suit is that the express company, in exacting payment of the defendant in error for a package carried by it, exceeded the rate allowed by law. For the express company to charge for carrying packages of goods and moneys is a perfectly legitimate act. It is in no sense criminal. The act complained of here is entirely innocent in itself, and is only contrary to law

Opinion.

because the charge exacted was greater than the statute allows. It is not characterized by the statute as a crime, or prosecuted and punished as such. This view is enforced by the provisions of section 1220, in that they do not dedicate the entire forfeiture for the use of the State, but direct that one-half thereof shall be for the use of the informer, who is enabled to recover it by a civil suit in the name of the State without a criminal prosecution and conviction. It is clear that the forfeiture in question is not a penalty for a crime, " an offence committed against the State," but simply a forfeiture for an act which the law-making power of the State in its wisdom deemed necessary to prevent imposition upon its citizens ; and, being so, it is not affected by the Constitution, and the Legislature had the right to prescribe the forfeit, and then dispose of it at its pleasure, either wholly to the State, or partly to the State and partly to the informer and others. The term " fines " used in the Constitution, literally construed, does not comprehend forfeitures. " A fine is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor." 1 Bouvier's Law Dict. 662. In chapter 31 of the Code the word " fine " includes a pecuniary forfeiture, penalty, and amercement ; but that is by virtue of the special enactment (sec. 745), and it could not affect the proper construction of the term " fines " as used in the Constitution.

The Constitution of Indiana contains a provision very similar to that under discussion in the Constitution of our own State. It provides that the Common School Fund of the State shall consist of, and be derived from, " the fines assessed for breaches of the penal law of the State, and from all forfeitures which may accrue." A statute was enacted imposing a certain duty upon every corporation or person operating a railroad in that State, and affixing a penalty for its violation, to be recovered in a civil action in the name of

the State, one-half of which should go to the prosecuting attorney, and the remainder to be paid to the county in which the proceeding was had, and constitute a part of the Common School Fund.  It was contended in the case of *State* v. *Indiana & I. S. R. Co.*, 32 N. E. Rep. 817, that the statute diverted or misappropriated the penalty, contrary to the provision of the Constitution above referred to ; but the court held that the " fines " specified in the Constitution had reference to fines assessed in criminal prosecutions, and that the penalty affixed to the statute for its violation was not a fine in that sense.  It therefore sustained the constitutionality of the statute.  This decision strongly corroborates the construction, it has seemed to us, should be given to the similar provision contained in sec. 7, Art. VIII., of our own Constitution.  See also *State* v. *Pennsylvania Co.* (Ind.), 32 N. W. Rep. 822, and *Ott* v. *Jordan* (Pa.), 9 Atlantic Reporter 321.

But if the constitutional provision so relied on to invalidate section 1220 were susceptible of the construction contended for by the counsel for the plaintiff in error, it would not invalidate it.  Such conclusion could only be reached by a very literal and narrow construction.  The Constitution does not impose fines nor provide for their enforcement.  To the Legislature belongs the duty of providing for their enforcement and collection, and also of imposing them, except where they are imposed by the common law.  It could not have been intended or expected by the framers of the Constitution that the laws imposing fines for offences could be enforced or collected without cost or expense.  They must have contemplated that fines, in being enforced and collected, should bear the burden of such means as the Legislature might deem best adapted to compel their enforcement and collection, and only intended to appropriate to the Literary Fund the amount coming to the State, after deducting such part as the Legislature may have set apart to secure their enforcement and

collection. If the Legislature possesses the right, as it does, to impose a fine or forfeiture, it has the power, as appurtenant to such right, to prescribe the proceeding or adopt the means deemed by it most likely to result in the enforcement of the fine or forfeiture. If it thought that its policy, as evidenced by the forfeiture provided for in section 1220, was more likely to be enforced by giving one-half of the forfeiture for the use of the informer, it had the right to do so, and only such part as it reserved for the use of the State would be covered by the constitutional provision. This is not an appropriation or diversion of the fine to an object other than that to which the Constitution dedicates it. On the contrary, all of the fine, beyond what the Legislature has deemed proper to set apart to stimulate the prosecution and secure the enforcement of the fine, goes to the Literary Fund, as required by the Constitution.

Moreover, it has been the practice of the Legislature, for a hundred years or more, in declaring forfeitures and fixing fines in certain cases, to provide, with the view of stimulating prosecutions in such cases, that an informer should be entitled to a part of the forfeiture or fine. Many such statutes were in the Code of Laws of the State and in force at the formation of the present Constitution, when sec. 7 of Art. VIII. was introduced for the first time into the organic law.

It is to be presumed that its framers were familiar with these statutes. And being familiar with them, it could hardly be that they intended to invalidate them, or by such indirection to prohibit a long-established policy of the Legislature, but that they simply intended to dedicate to the Literary Fund that part of such forfeitures and fines which was reserved to the State. So, then, in neither view is section 1220 repugnant to the Constitution.

It is next contended that the minimum fine of $100.00 is excessive, and in violation of sec. 11, Art. I., of the Constitu-

tion, which provides that " excessive fines " ought not to be imposed. The imposition and regulation of fines belongs to the Legislature, and to its discretion and judgment the widest latitude must be conceded. Fines are to be fixed with reference to the object they are designed to accomplish. The degree of criminality of the offence, or the illegality or impolicy of the act they are intended to punish or prevent, are elements that must enter into their consideration. The peace of society and the welfare of the people occasionally require that the Legislature shall create new offences, and affix penalties for their violation, or alter the penalties for others already existing. What is to be the legislative guide, in the performance of this duty, but its sound judgment and the wisdom of experience? And how can the courts with reason or propriety question the action of the Legislature, or control or restrain its discretion, except where the minimum penalty is so plainly disproportioned to the offence or act, for the violation of which it is affixed, as to shock the sense of mankind? Bearing in mind the considerations which must affect the regulation of fines, and the discretionary power of the Legislature, how can the court say that the minimum fine prescribed in section 1220 is excessive? By what standard is it to determine this question? A fine that would prove efficacious in the case of an individual, and beyond which it would appear to be excessive to go, would be likely to prove ineffectual in the case of a corporation, with its aggregated wealth and power, and its disposition to act, oftentimes, in an arbitrary manner, because of the inability of private persons to contend against its illegal and wilful acts. The minimum fine prescribed by section 1220 cannot be declared to be excessive by any standard which the courts can apply, and this objection need not be further considered.

It is further contended that the statute is unconstitutional in that it fails to prescribe a maximum limit to the forfeiture, and thus places it within the power of a jury, through

caprice or prejudice, to mulct a corporation with a fine of so large an amount as practically to destroy it. If a supposition so extreme, and so unlikely ever to be confirmed, were to be verified in consequence of the failure to fix a maximum limit to the forfeiture, still we are unable to see how that would render the statute obnoxious to the Bill of Rights, or sec. 11 of Art. I. of the Constitution. How can the bare possibility that an excessive fine might be imposed by a jury invalidate the statute? If so, a statute otherwise valid might be annulled by a possibility that might never happen. If a jury were to render a verdict so excessive as to contravene the inhibition of the Constitution, the wrong or vice would lie in the verdict, and not in the statute. And the objection overlooks the fact that, if a jury were to impose such a fine, it is the province of the court, and would be its duty, to set aside the verdict.

The question as to an excessive fine is a judicial one, and does not affect the validity of the statute. When, if ever, any such fine is imposed by a jury, the corrective hand of the court will annul it, in accordance with the letter and spirit of the Bill of Rights.

The only remaining objection to the statute is that it is repugnant to Art. VIII. of the Amendments to the Constitution of the United States. It is a sufficient answer to this objection to say that the Supreme Court of the United States has held, time and again, that the eighth article of the said amendments has reference solely to powers exercised by the Government of the United States, and does not apply to the States. *O'Neil* v. *State of Vermont*, 144 U. S. 323 ; *Eilenbecker* v. *District Court of Plymouth County* (Iowa), 134 U. S. 31 ; *Pervear* v. *Massachusetts*, 5 Wall. 475, and *Livingston* v. *Moore*, 7 Peters 469.

There is no error in the judgment of the Circuit Court, and it is therefore affirmed.

*Affirmed.*