[No. 1612.]

## EX PARTE McMAHON.

CONSTITUTIONAL LAW—DISPOSITION OF FINES. Const., art XI, sec. 3, provides that all fines collected under the general law of the state, and all proceeds derived from such sources shall be devoted to educational purposes only: *Held*, that Stats. 1901, p. 121, enacted for the protection of wild game, and directing that a portion of the fines collected thereunder for violation thereof shall be paid to the informer, is unconstitutional.

PETITION by one McMahon for writ of *habeas corpus* to secure the petitioner's release from imprisonment for a violation of the game laws. **Petitioner discharged.**

The facts sufficiently appear in the opinion.

*F. H. Norcross*, for Petitioner:

I. Courts have power to review the acts of the legislature as to whether or not in a given case a general law can be made applicable. (*Hess* v. *Pegg*, 7 Nev. 28; *Evans* v. *Job*, 8 Nev. 336, 342; *Singleton* v. *Eureka Co.*, 22 Nev. 97.)

II. There is no relation between game and population, and a game law that applies to counties solely according to their population is clearly unconstitutional. (*Singleton* v. *Eureka Co.*, 22 Nev. 97.)

III.   The act is unconstitutional in that it attempts to regulate interstate commerce.   (8 Am. & Eng. Ency. Law, 1st ed. 1029; *State* v. *Saunders*, 19 Kan. 127; *Com.* v. *Wilkinson*, 139 Pa. St. 304; 60 Am. St. Rep. Md. 332.)

IV.   A police regulation that is a palpable invasion of rights secured by the fundamental law (interstate commerce) is unconstitutional.   (17 Am. & Eng. Ency. Law, 2d ed. 56–7, and notes 1 to 6, p. 57.)

*William Woodburn*, Attorney-General, and *E. E. Roberts*, District Attorney, for the State:

I.   For the further protection of game provision is usually made by statute for having in possession or exposing for sale, during stated seasons of the year, certain specified animals or fowls.   Much litigation has arisen in this connection as to the right of the legislature to prohibit the possession and sale of game captured or killed in another state, and the courts have not been altogether uniform in their decisions. The weight of authority, however, seems to indicate that such right exists, and that such an act may be punished, notwithstanding the fact that such game may have been brought from a foreign jurisdiction.   This doctrine has been denied by other courts, which hold that when the game was lawfully taken during the open season, or imported from another state, the mere possession of it during the close season constitutes no offense and is without the terms of the statute. This non-conformity of decisions among the several courts is due to the peculiar wording of the several statutes under which the decisions were made, and the evident intention of the legislature as evidenced by the peculiar necessity of the locality.   (*Philips* v. *Racey*, 60 N. Y. 10; 19 Am. Rep. 140.)

II.   The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds, one of which is for the purposes of food. The measures best adapted to this end are for the legislature to determine and courts cannot review its discretion.   If the regulations operate in any respect unjustly or oppressively, the proper remedy must be applied by that body.   In general, the constitutionality of the several statutes for the protection of game has been frequently called in question, but

they have been almost universally upheld on the ground of the police power of the state. (*Geer* v. *Connecticut*, 161 U. S. 519; *Ex parte Maier*, 103 Cal. 476; 42 Am. Rep. 129; *Exp. Co.* v. *People*, 133 Ill. 649; *State* v. *Chapel*, 64 Minn. 130-38; *Allen* v. *Wyckoff*, 48 N. J. L. 57, 90; Am. Rep. 548.)

*Per Curiam:*

The petitioner was convicted in the justice's court of Ormsby county, Nevada, of violating Section 5 of the act protecting wild game (Stats. 1901, p. 121), and sentenced to pay a fine of $25, and in default to be confined in the county jail at the rate of one day for each $2 thereof until paid.

By the sentence one-half of the fine was ordered paid to one Robinson, the informer.

The petitioner brings *habeas corpus* for his discharge from the custody of the Sheriff of Ormsby county.

He contends that the act under which he was convicted is unconstitutional, and points out many provisions which he claims contravene our constitution.

Many of the points made against the law are not involved in the case, and it is only necessary to consider the objection to Section 19, under which authority is given for the judgment directing that one-half of the fine be paid the informer, and therefore directly involving the validity of the judgment under which he is held.

Our constitution provides, among other matters (sec. 3, art. 1), that "all fines collected under the penal laws of the state   *   *   *   and all proceeds derived from any or all of said sources shall be and the same are hereby solemnly pledged for educational purposes and shall not be transferred to any other fund for other uses.   *   *   *"

The language used is plain, clear, and unambiguous, and does not require construction, and it seems to us that said Section 19 of the act, *supra*, clearly contravenes this constitutional provision.

The case decided by the Supreme Court of Wisconsin (*State* v. *De Lano*, 80 Wis. 259), cited in support of the constitutionality of this section of our statute, was based upon a constitutional provision very different from ours, and is therefore easily distinguished.

While it is true the language of the constitution of Virginia is similar to the language used in our constitution, we cannot adopt the construction placed by the supreme court of that state in the case of *Southern Exp. Co.* v. *Com.*, 92 Va. 59. So to do would result in a construction both unwarranted and unwise, and might justify legislation which would impair our school fund. It also appears that much that was said by the court in the Virginia case was not necessary to a decision of the question involved, and is therefore mere *dicta.*

It appearing, therefore, that the section authorizing the judgment given in this particular case is unconstitutional, the judgment is therefore void, and an order will be made discharging the petitioner from custody.