JOSEPH P. SHORE, CLERK OF THE SUPERIOR COURT OF GUIL-
FORD COUNTY, NORTH CAROLINA v. RUFUS L. EDMISTEN,
ATTORNEY GENERAL FOR THE STATE OF NORTH CAR-
OLINA; GUILFORD COUNTY; CITY OF GREENSBORO; CITY
OF HIGH POINT; THE TRUSTEES OF GUILFORD TECHNICAL
INSTITUTE; THE GUILFORD COUNTY BOARD OF EDUCA-
TION; THE GREENSBORO CITY BOARD OF EDUCATION; THE
HIGH POINT CITY BOARD OF EDUCATION; AND THE TOWN
OF JAMESTOWN BOARD OF ALCOHOLIC CONTROL

No. 53

(Filed 1 September 1976)

1. Criminal Law § 138— punishments permitted by N. C. Constitution —
   suspended sentence upon conditions — consent of defendant

   Though Article XI, § 1 of the N. C. Constitution enumerates the
   permissible punishments in this State, a constitutionally designated
   punishment may be suspended with the consent of defendant upon his
   performance of conditions which are otherwise constitutional, related
   to the purposes of punishment, and otherwise reasonable.

2. Criminal Law § 142— suspended sentence — fines and restitution as
   conditions

   Fines and restitution are permissible conditions for suspension of
   sentences or for probationary judgments. G.S. 15-199(9), (10).

3. Criminal Law § 142— suspended sentence — fines go to public schools
   — restitution goes to aggrieved party

   While fines and restitution are permissible conditions for sus-
   pension of sentence or probation, it is necessary for the trial judge
   to be precise as to which one he imposes, since a fine must go to the
   county for the use of the public schools, while restitution goes to the
   aggrieved party. N. C. Constitution, Article IX, § 7.

4. Criminal Law § 142— suspended sentence — fine imposed — use by
   public schools only

   Any statute purporting to give what are in reality fines either to
   an individual or to another governmental agency violates Article IX,
   § 7 of the N. C. Constitution; likewise, any judgment by a trial judge
   which seeks to direct payment of a fine anywhere other than to the
   counties for the use of the public schools is unconstitutional.

5. Criminal Law § 142— suspended sentence — fines and restitution —
   definitions

   Fines are pecuniary punishment exacted by the State and im-
   posed in the discretion of the trial court for the purpose of punishing
   the defendant, while restitution is compensation to an aggrieved party.

6. Criminal Law § 142— suspended sentence — restitution to state or local
   agency — propriety

   A state or local agency can be the recipient of restitution where
   the offense charged results in particular damage or loss to it over and
   above its normal operating costs.

Shore v. Edmisten, Atty. General

7. **Criminal Law § 142; Narcotics § 5— suspended sentence — money paid by officers for drugs — restitution proper**
    In a prosecution for sale or possession of contraband, it is proper to order reimbursement to a state or local agency as a condition for suspension of sentence or probation for any sum paid by its agents to the defendant in order to obtain evidence of the crime. G.S. 90-95.3.

8. **Criminal Law § 142; Narcotics § 5— suspended sentence — money paid by officers for drugs — restitution proper**
    Where a defendant was charged with possession of a controlled substance, a sentence of imprisonment was suspended on condition that defendant pay into court $60 for the money officers spent on the drugs, and the trial judge referred to the payment as "restitution" rather than a "fine," the amount to be disbursed in this case was not a fine but could be disbursed as restitution.

9. **Criminal Law § 142— suspended sentence — restitution ordered — aggrieved party not named — money treated as fine**
    Where restitution is ordered it must be to a specific aggrieved party and this party must be named in the judgment; therefore, where a defendant was placed on probation on condition that he pay $40 as reparation or restitution but there was no indication whatsoever as to whom the restitution should be paid, the $40 was in effect a fine and the money should be paid to the county for the school fund.

10. **Criminal Law § 142; Narcotics § 5— suspended sentence — money required of defendant — fine and restitution required**
    Where a defendant who pled guilty to possession of marijuana was ordered to pay $50 to the clerk of superior court to be paid to Guilford Technical Institute, the $50 was a fine, not restitution, and payable only to the school fund.

11. **Criminal Law § 142— suspended sentence — money required "for continued enforcement" by vice squad — money treated as fine**
    Where a defendant pled guilty to possession and sale of non-tax-paid liquor, and the condition of the suspended sentence was that defendant pay to the clerk $500 for use of the vice squad of the High Point Police Department "for continued enforcement," the payment ordered was a "fine" payable under the N. C. Constitution only to the public schools.

ON petition for discretionary review prior to determination in the Court of Appeals, N. C. Gen. Stat. 7A-31, to review the judgment of *Walker, S.J.*, at the November 10, 1975 Special Non-Jury Civil Session of GUILFORD County Superior Court. This action was instituted by the plaintiff-appellee, the Clerk of the Superior Court of GUILFORD County [hereinafter clerk], pursuant to the North Carolina Uniform Declaratory Judgment

Act, N.C. Gen. Stat. 1-253 *et seq.* to determine the ownership of funds which he held in his official capacity.

In thirty-four criminal actions tried in the courts of Guilford County various judgments were entered which included provisions that each defendant pay money to the clerk for disbursement of the funds to various state and local agencies. Defendants are either those state and local agencies to which funds were ordered to be disbursed, including defendant-appellant City of Greensboro, or were various boards of education, including defendant-appellee Guilford County Board of Education, that claimed entitlement to the funds.

The clerk asked for a judgment advising and instructing him whether the funds which he held as a consequence of these judgments should be paid to the recipients designated in the jugdments or to the Guilford County Treasurer for the use of public schools as the clerk contended was required by the North Carolina Constitution, Article IX, § 7.

After answers were filed by all defendants and a pretrial order entered, Judge Walker entered his ruling based upon the pleadings, the stipulations of the parties and the judgments themselves as exhibits. He found that the monies ordered paid in the judgments in question were fines within the meaning of Article IX, § 7 of the North Carolina Constitution. He concluded and so decreed that these monies belonged to Guilford County for the use of the public schools; that provisions of the judgments insofar as they directed monies elsewhere were null and void; and that the clerk should disburse the monies to the Treasurer of Guilford County and in so doing would be exonerated from liability.

Only the defendant-appellant City of Greensboro appealed.

*Jesse L. Warren, City Attorney, City of Greensboro, and Dale Shepherd, Attorneys for Appellant City of Greensboro.*

*Fred M. Upchurch, for Joseph P. Shore, Clerk of the Superior Court of Guilford County, Plaintiff Appellee.*

*John W. Hardy, for The Guilford County Board of Education, Defendant Appellee.*

EXUM, Justice.

Judge Walker properly concluded that all fines must go to Guilford County for the use of the public schools and as to all

but one of the judgments properly concluded that the payments ordered were indeed fines. As to one judgment *(State v. Rogers,* Exhibit HH) he erred in holding that the payment in question was a "fine" in the constitutional sense. We conclude, for reasons hereinafter stated, that the money ordered to be paid in the Rogers judgment was restitution properly payable to the Greensboro Police Department. Judge Walker's judgment is to this extent modified and, as modified, affirmed.

[1]  The starting point for discussion is Article XI, § 1 of the North Carolina Constitution which provides:

> "The following punishments only shall be known to the laws of this State: death, imprisonment, fines, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State."

This provision, in effect since 1868, was intended to stop the use of degrading punishments theretofore inflicted, but as a necessary consequence it also limited the creativity of trial judges in fashioning remedies for crime. *See* A. Coates, "Punishment for Crime in North Carolina," 17 N. C. L. Rev. 205 (1939).

Because of the desire for more diverse responses to criminal behavior the practice developed to suspend a constitutionally designated punishment with the consent of the defendant upon his performance of conditions. Although these conditions must be otherwise constitutional, related to the purposes of punishment, and otherwise reasonable they need not be limited to the type of punishment prescribed by Article XI, § 1 of our Constitution. A suspended sentence or probationary judgment can only be entered with the consent of the defendant. He can always choose to reject it and accept a punishment enumerated in the constitutional provision. Hence, no constitutional infirmity is seen. *State v. Simmington,* 235 N.C. 612, 70 S.E. 2d 842 (1952). *See generally* A. Coates, "Punishment for Crime in North Carolina," 17 N. C. L. Rev. 205 (1939) ; "Comment: Power of Court to Suspend Judgment," 2 N. C. L. Rev. 50 (1924) ; "Note: Separation of Powers—The Suspended Sentence," 51 N. C. L. Rev. 184 (1972) ; C. E. Hinsdale and R. Chaney, Conditions of Adult Probation—Legal and Illegal (Institute of Government, University of North Carolina at Chapel Hill 1976).

Generally courts have inherent authority to suspend sentences on the performance of conditions, *State v. Hilton,* 151

N.C. 687, 65 S.E. 1011 (1909). In the case of probation judgments the power to suspend on conditions is explicitly granted by General Statute 15-199 which provides in part:

> "The court shall determine and may impose, by order duly entered, and may at any time modify the conditions of probation and may include among them the following, *or any other:* that the probationer shall:

> *        *        *

> (9) Pay a fine in one or several sums as directed by the court;

> (10) Make reparation or restitution to the aggrieved party for the damage or loss caused by his offense, in an amount to be determined by the court."

[2]  As a condition for suspension a fine is obviously reasonable since the fine itself could have been imposed constitutionally as the only punishment. Fines are explicitly listed in General Statute 15-199(9) as a permissible condition for a probationary judgment. Where a fine is imposed the amount is subject to the constitutional provision that it not be excessive. N. C. Const. Art. I § 27. Restitution to an aggrieved party for damage, injury, or loss caused by criminal offense is also a reasonable condition for suspension of sentence, *State v. Simmington, supra,* or a probationary judgment, N. C. Gen. Stat. 15-199(10). Both fines and restitution are widely used. *See* C. E. Hinsdale and R. Chaney, *supra* at 3-6, 21.

[3]  While fines and restitution are permissible conditions for suspension of sentence or probation it is necessary for the trial judge to be precise as to which one he imposes because the disposition of the money differs accordingly. Restitution goes to the aggrieved party. A fine must go, however, to the county for the use of the public schools. North Carolina Constitution, Article IX, § 7 provides:

> "All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools."

The purpose of this constitutional provision was stated in *Boney v. Kinston Graded School,* 229 N.C. 136, 48 S.E. 2d 56 (1948):

> "It is manifest that Article IX, Section [7], of the Constitution was designed in its entirety to secure two wise ends, namely: (1) To set apart the property and revenue specified therein for the support of the public school system; and (2) to prevent the diversion of public school property and revenue from their intended use to other purposes."

**[4]** We have held that any statute purporting to give what are in reality fines either to an individual or to another governmental agency violates this constitutional provision. *State v. Maultsby,* 139 N.C. 583, 51 S.E. 956 (1905); *School Directors v. Asheville (II),* 137 N.C. 503, 50 S.E. 279 (1905); *School Directors v. Asheville (I),* 128 N.C. 249, 38 S.E. 874 (1901); *Board of Education v. Henderson,* 126 N.C. 689, 36 S.E. 158 (1900). Likewise any judgment by a trial judge which seeks to direct payment of a fine anywhere other than to the counties for the use of the public schools is unconstitutional.

**[5]** In determining whether a given payment is a fine or restitution, the label given by the judge (or the legislature) is not determinative. *School Directors v. Asheville (I), supra; People v. Labarbera,* 89 Cal. App. 2d 639, 201 P. 2d 584 (1949); *People v. Barber,* 14 Mich. App. 395, 165 N.W. 2d 608 (1968) ("fine" labeled as "costs"). Fines are pecuniary punishment exacted by the state and imposed in the discretion of the trial court for the purpose of punishing the defendant. *State v. Maultsby, supra; School Directors v. Asheville (II), supra; Board of Education v. Henderson, supra; Common Council of Town of Indianapolis v. Fairchild,* 1 Ind. (1 Cart.) 315 (1848); *Southern Express Co. v. Walker,* 92 Va. 59, 22 S.E. 809 (1895), *aff'd,* 168 U.S. 705. Restitution is compensation to an aggrieved party. Ordinarily it could be recovered in a civil action but its collection as a condition of a suspended sentence is a reasonable ancillary remedy. *State v. Simmington, supra; cf. State v. Sullivan,* 24 Ore. App. 99, 544 P. 2d 616 (1976) (Chief Judge Schwab dissenting). *See also* John R. Gerber, "Joinder of Civil and Criminal Relief—A Comparative Analysis," 22 Syracuse L. Rev. 669 (1971).

**[6]** A state or a local agency can be the recipient of restitution where the offense charged results in particular damage or loss

to it over and above its normal operating costs. It would be reasonable, for example, to require a defendant to pay the State for expenses incurred to provide him with court appointed counsel should he ever become financially able to pay. *Fuller v. Oregon,* 417 U.S. 40 (1974). It would not however be reasonable to require the defendant to pay the State's overhead attributable to the normal costs of prosecuting him. *People v. Baker,* 112 Cal. Rptr. 137 (Ct. App. 1974) ; *State v. Mulvaney,* 61 N.J. 202, 293 A. 2d 668 (1972) ; *cf. People v. Teasdale,* 335 Mich. 1, 55 N.W. 2d 149 (1952). In *People v. Baker, supra,* defendant, a licensed doctor, was convicted of prescribing narcotics to persons not under his treatment. A sentence was suspended and defendant placed on probation on condition he reimburse the county and state in the amount of $90,000 for the minimum estimated costs of prosecution. He was also fined $10,000 and assessed penalties. The California court held: (1) While the government may be reimbursed for "actual loss flowing from the charged offense" such "actual loss" does not include the usual costs of prosecuting and rehabilitating criminals. (2) Under a statute allowing, in addition, any "reasonable condition of probation" the costs of prosecution and probation cannot be judicially imposed upon defendant. It has been held that payments ordered by courts to reimburse the state for its general overhead attributable to prosecution costs violates the principle of separation of powers in that the judge is assuming the legislative function of allocating the resources of the state. *People v. Barber, supra;* Ex parte Coffelt, 93 Okla. Crim. 343, 228 P. 2d 199 (1951).

[7]   In a prosecution for sale or possession of contraband we hold that it is proper to order the defendant to reimburse a state or local agency, as a condition for suspension of sentence or probation, any sum paid by its agents to the defendant in order to obtain evidence of the crime. Such a payment is not a fine. *Cf. State v. Bickford,* 28 N.D. 36, 147 N.W. 407 (1914). To allow the defendant to retain this money would result in unjust enrichment to him. Requiring him to return it to the agency which supplied it as restitution would be a reasonable condition for suspension of sentence or probation. General Statute 90-95.3 (1975 Cum. Supp.) now provides:

> "When any person is convicted of an offense under this Article, the court may order him to make restitution to any law-enforcement agency for reasonable expenditures made

in purchasing controlled substances from him or his agent as part of an investigation leading to his conviction."

We see no constitutional infirmity in this statute so long as the order is a condition of suspension of sentence or probation to which defendant consents.

There remains one refinement of the law to be considered. The Constitution directs the disposition of the "clear proceeds of penalties and forfeitures and of all fines . . . . " Due to this unusual grammatical phrasing there were some early decisions that the concept of "clear proceeds" did not apply to "fines." *Board of Education v. Henderson, supra* (opinions by Furches and Faircloth) ; *School Directors v. Asheville (I), supra.* This was doubtless due to the influence of earlier decisions in regard to "penalties" to the effect that since an informant could get as much as 100 percent of a penalty in a *qui tam* action the penalty was not given to the State and there were no "clear proceeds" of the penalty to go to the schools. *Sutton v. Phillips,* 116 N.C. 502, 21 S.E. 968 (1895) ; *State ex rel. Hodge v. R. R.,* 108 N.C. 24, 12 S.E. 1041 (1891) ; *Katzenstein v. R. R.,* 84 N.C. 688 (1881). *Contra Dutton v. Fowler,* 27 Wis. 427 (1871). *Compare State v. De Lano,* 80 Wis. 259, 49 N.W. 808 (1891) *with State ex rel. Guenther v. Miles,* 52 Wis. 488, 9 N.W. 403 (1881).

Apparently this Court felt that the rationale of this line of decisions should not extend to the disposition of "fines" and, at first, held that 100 percent of a fine must go to the schools, *Board of Education v. Henderson, supra,* in effect reading "clear proceeds" out of the "fines" branch of the constitutional provision. In *School Directors v. Asheville (II), supra,* the Court intimated the "clear proceeds" language might apply to "fines" as well as to "penalties and forfeitures," but how much proceeds is "clear proceeds" would not necessarily rest solely in the hands of the legislature. The Court suggested that it could limit the words "clear proceeds" to mean that the legislature could dispose of only a part of the fine and the power of the legislature might be exhausted by giving to the clerk or sheriff a reasonable commission for collecting the fines before paying it over to the schools. The Court also suggested that a five percent commission as found in another statute or some other reasonable commission might exhaust the power of the legislature to demarcate "clear proceeds."

In *State v. Maultsby, supra,* this Court declared unconstitutional a statute under which a judge imposed a fine for selling whiskey insofar as it provided that an informant would receive one-half of the fine imposed. The Court noted that the amount ordered paid was quite clearly a fine since it was discretionary with the trial judge; therefore, the "clear proceeds" of the fine must go to the school fund. "Clear proceeds" meant the total sum less only the sheriff's fees for collection. The amount which the statute provided could be paid to an informant to induce enforcement was not constitutionally deductible from a "fine."

Cases from other states with similar constitutional provisions support the proposition that monies to be set aside for *future* enforcement of the law cannot be deducted from "fines" to arrive at "clear proceeds" of fines. *People v. Barber, supra; State ex rel. Rodes v. Warner,* 197 Mo. 650, 94 S.W. 962 (1906); *Ex parte McMahon,* 26 Nev. 243, 66 P. 294 (1901); *State ex rel. Comrs. of Public Lands v. Anderson,* 56 Wis. 2d 666, 203 N.W. 2d 84 (1973); *State ex rel. Johnson v. Maurer,* 159 Wis. 653, 150 N.W. 966 (1915); *State ex rel. Guenther v. Miles, supra; cf. State v. Parkins,* 63 W. Va. 385, 61 S.E. 337 (1908). In *Rodes* the Missouri legislature had attempted to give fines collected for the breach of game laws to the "Game Protection Fund" to pay salaries and expenses of wardens. The Court said, 197 Mo. at 664, 94 S.W. at 966:

> "But where fines and penalties are prescribed as a punishment for a violation of public wrongs, i.e., *crimes,* and such penalties or fines are to be recovered by public authority, the disposition of such recovered fines or penalties comes within the constitutional provision under consideration, and they may not be turned awry from the prescribed constitutional course."

In the case at bar Judge Walker considered thirty-four different judgments rendered in the various courts of Guilford County which the clerk claims run afoul of the Constitution in that monies properly payable only to the county for public schools were ordered paid to some other state or local agency. It would serve no useful purpose to consider each judgment individually. We discuss four representative judgments in detail.

[8] In *State v. Rogers* (Exhibit HH) defendant pled guilty to possession of a controlled substance. A sentence of imprison-

ment was suspended on condition "that he pay $60.00 into the office of the Clerk of Superior Court for the benefit of the Greensboro Police Department-Vice Division *for money they spent on these drugs.*" (Emphasis added.) In the accompanying probation judgment it was stated as a condition of probation that the defendant shall make "reparation or restitution . . . in an amount to be determined by the Court: $60.00." The amount on the probation judgment form for a "fine" was left blank. A special probation condition was that the "defendant pay into the office of the Clerk of Superior Court the costs and restitution . . . . Restitution to be disbursed to the GPD-Vice Division." In view of the nature of the offense, the judge's finding that the $60.00 was for "monies they spent on these drugs" and the judge's reference to the payment as "restitution" rather than a "fine," we hold that the amount to be disbursed in this case was not a fine and could be disbursed as restitution as ordered in the judgment. *Cf. State v. Bickford, supra.* The conclusion of Judge Walker to the contrary in this instance is erroneous.

None of the individual records giving rise to the thirty-four judgments in question are before us. We must presume that the restitution ordered in the Rogers judgment was supported by the record. The question of how much support there must be in the record is an important one. We note that the criminal trial itself may not be conducted to decide the question of how much damage or loss has been suffered. In *Shenah v. Henderson,* 106 Ariz. 399, 476 P. 2d 854 (1970) the fact that there had been a presentence report and a mitigation hearing was held to support the court's determination in its judgment of the amount of injury done. *Accord, State v. Sullivan, supra.* An instructive case is *State v. McClanahan,* 194 Neb. 261, 231 N.W. 2d 351 (1975). Defendant was convicted of larceny of a registered quarterhorse. The evidence at trial was that the horse was worth at least $500 and possibly $600 to $800. Defendant was placed on probation on condition that he make restitution of $600 to the owner of the horse. Defendant contended that the court abused its discretion in ordering restitution in any amount in excess of $500. The Nebraska Supreme Court disagreed and held that restitution is not limited to market value, the state is not required to establish the exact amount and the amount which may be ordered is a matter of the exercise of the trial court's discretion. Since evidence of the horse's value ranged from $500 to $800, a restitution order of $600 was not error. Nothing in

that opinion, however, would indicate that an award of $1,000 would have been permissible. *Cf. State v. Sullivan, supra.*

**[9]** In *State v. Tinsley* (Exhibit GG) defendant pled guilty to possession of marijuana. Entry of a judgment of guilt was continued and defendant was p'aced on probation for a period of one year (N. C. Gen. Stat. 90-96) on condition that he make "reparation or restitution . . . in an amount to be determined by the Court: $40.00." The amount for a fine was left blank. As a special condition of probation defendant was ordered to pay into the clerk's office "the court cost and restitution." This judgment differs from the Rogers judgment in that there is no indication whatsoever as to whom the restitution should be paid. This difference is crucial. Where restitution is ordered it must be to a specific aggrieved party and this party must be named in the judgment. Although the judge who signed this judgment may have intended this payment to be "restitution" to someone, we conclude that Judge Walker was correct in holding that it was in effect a fine and that the clerk should pay the money to the county for the school fund.

**[10]** In *State v. Dickerson* (Exhibit EE) defendant p'ed guilty to possession of marijuana. Entry of judgment of guilt was continued (N. C. Gen. Stat. 90-96) and defendant was ordered to pay costs and "the sum of $50.00 to the Clerk of Superior Court to be paid to [Guilford Technical Institute] . . . . " On the order the amount for "reparation or restitution to the aggrieved party" was left blank. Judge Walker properly concluded that this "sum of $50.00" was a fine which must go to the public schools. It was not labeled restitution. There is nothing in the judgment to indicate that it was so intended. It is highly unlikely that Guilford Technical Institute could be an "aggrieved party" for this type of offense. *Compare State v. Stalheim,* 542 P. 2d 913 (Ore. App. 1975) *with State v. Gunderson,* 74 Wash. 2d 226, 444 P. 2d 156 (1968), *overruled on another point, State v. Gosby,* 85 Wash. 2d 758, 539 P. 2d 680 (1975).

**[11]** In *State v. Welch* (Exhibit DD) defendant pled guilty to possession and sale of non-tax-paid liquor. The condition of the suspended sentence was that defendant pay to the clerk "the sum of $500.00 for the use and benefit of the Vice Squad of the High Point Police Department *for continued enforcement."* (Emphasis added.) Nothing in the judgment indicates that restitution was intended or appropriate. Monies for *continued en-*

*forcement* are to be provided by the legislature, not the judiciary. *People v. Barber, supra; State ex rel. Rodes v. Warner, supra; Ex parte Coffelt, supra; State ex rel. Johnson v. Maurer, supra.* Judge Walker properly concluded that the payment ordered in the Welch judgment was a "fine" payable under our Constitution only to the schools.

Payments ordered to be paid in the other thirty judgments must be considered fines payable to the schools for one or more of the reasons we have noted with regard to the Tinsley, Dickerson and Welch judgments. Although in several of the cases restitution could have been intended and may have been proper Judge Walker properly concluded on the basis of the language of the judgments themselves and the legal principles we have discussed that each imposed a "fine" payable only to Guilford County for the use of the public schools. Each party will bear his own costs in this Court.

Modified and affirmed.