STATE v. BONDS

[120 N.C. App. 546 (1995)]

STATE OF NORTH CAROLINA v. WILLIE ROBERT BONDS, Defendant

No. COA94-1397

(Filed 7 November 1995)

**Narcotics, Controlled Substances, and Paraphernalia § 42 (NCI4th)— cash taken from defendant's residence—cash seized as evidence—no forfeiture case**

The district attorney's failure to designate cash taken from a criminal defendant's home as needed evidence or to act in any way to deny release of the proceeds established conclusively that the district attorney permitted release of the proceeds to the Department of Revenue for payment of a controlled substance tax assessment under N.C.G.S. § 15-11.1(a) and that this was not a forfeiture case; therefore, the trial court was without authority to compel the Department of Revenue to remit these funds back to the sheriff's department.

**Am Jur 2d, Drugs and Controlled Substances §§ 206, 212.**

Judge EAGLES dissenting.

Appeal by the State of North Carolina from order entered 6 July 1994 by Judge G.K. Butterfield in Wayne County Superior Court. Heard in the Court of Appeals 27 September 1995.

*Michael F. Easley, Attorney General, by Christopher E. Allen, Assistant Attorney General, for appellant North Carolina Department of Revenue.*

*Warren, Kerr, Walston, Hollowell and Taylor, by Richard J. Archie, for Wayne County Board of Education.*

WYNN, Judge.

Plaintiff appeals an order by the trial court compelling the Department of Revenue to remit $1,646.60 that it previously garnished from the Wayne County Sheriff's Department. We reverse.

On 8 January 1993, law enforcement officers of the Wayne County Sheriff's Department arrested defendant Willie Ray Bonds for possession of crack cocaine. At the time of his arrest, the defendant was also in possession of $2,715.00 located in his residence. This currency

was seized by law enforcement as potential evidence, but defendant stated that it was money he had saved to repair two vehicles which were in the shop at the time. A Form BD-4 Report of Arrest and/or Seizure Involving Nontaxed (Unstamped) Controlled Substances was prepared by the Wayne County Sheriff's Department the day of the arrest and sent to the State Bureau of Investigation, who, pursuant to N.C. Gen. Stat. § 114-18.1 (1994), forwarded the report to the Department of Revenue.

A Notice of Controlled Substance Tax Assessment in the amount of $1,646.60 was issued by the Secretary of Revenue on 20 October 1993 to defendant and mailed to the last known address of the taxpayer pursuant to N.C. Gen. Stat. § 105-241.1 (1992). On that same date, Glenn Odom served a notice of garnishment issued by the Secretary of Revenue pursuant to N.C. Gen. Stat. § 105-242(b) (1992) upon the Wayne County Sheriff's Department who complied with the garnishment by remitting to the Department of Revenue $1,646.60, representing payment in full of the assessed tax, penalty, and interest. The taxpayer neither objected to the assessment nor demanded a refund of taxes paid.

On 31 May 1994, Mr. Bonds pled guilty to possession of cocaine and was sentenced to an active term of two years. The trial court further ordered that the $2,715.00 seized at the time of the arrest be forfeited to the Wayne County School fund. That same day, the trial court ordered that the Department of Revenue be made a party to the criminal action pursuant to N.C. Gen. Stat. § 15-11.1 (1983) and to show cause why the funds collected by the Department should not be ordered returned to the Wayne County Sheriff's Department. On 15 June 1994, notice of a hearing was issued to Janice H. Faulkner, Secretary of Revenue, and Glenn Odom, Revenue Enforcement Officer.

At the hearing on 6 July 1994, the trial court concluded that it had jurisdiction over the parties in the cause and that the currency seized by law enforcement officers from Mr. Bonds was defendant's property and was taken as potential evidence in the criminal prosecution. The court also concluded that as potential evidence, it was not subject to garnishment by the Department of Revenue for the controlled substance tax. The court then ordered that the Department of Revenue "remit the seized currency in the amount of $1,646.60 back to the Wayne County Sheriff's Department who shall then pay the same to the Clerk of Superior Court who shall then pay over the same

to the Finance Officer for Wayne County who shall then disburse the same to the local school administrative unit[s] in Wayne County entitled thereto." From this order, the Department of Revenue filed notice of appeal.

We note initially that the case *sub judice* is not a forfeiture case. There are several methods in which law enforcement officers can lawfully seize personal property, including currency. One such method is pursuant to the controlled substances forfeiture statute which provides in pertinent part:

> The following shall be subject to forfeiture: . . . [a]ll money, raw material, products, and equipment of any kind which are acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance in violation of the provisions of this Article.

N.C. Gen. Stat. § 90-112(a)(1)(2) (1993). Such property must be held for safekeeping "until an order of disposition is properly entered by the judge." N.C.G.S. § 90-112(c).

Law enforcement officers may also, incident to a valid arrest, seize any property which the arrested person has on him which is potential evidence of a crime. *State v. Harris*, 279 N.C. 307, 310, 182 S.E.2d 364, 367 (1971). N.C.G.S. § 15-11.1 (1983) provides the following:

> If a law enforcement officer seizes the property pursuant to lawful authority, he shall safely keep the property under the direction of the court or magistrate as long as necessary to assure that the property will be produced and may be used as evidence in any trial.

Notwithstanding this general restriction, N.C.G.S. § 15-11.1(a) specifically authorizes the district attorney "upon his own determination, . . . [to] release any property seized pursuant to his lawful authority if he determines that such property is no longer useful or necessary as evidence in a criminal trial and he is presented with satisfactory evidence of ownership."

We find N.C.G.S. § 15-11.1(a) to be dispositive. The trial court found that law enforcement seized the currency as potential evidence, rather than property subject to forfeiture pursuant to N.C.G.S. § 90-112(a)(2). Therefore, once the district attorney determined

under N.C.G.S. § 15-11.1(a) that the potential evidence was not needed at trial, he had complete control to release the property to the lawful owner or to another entitled to possession without a court order.

In this matter, the district attorney did not contest, either at the trial level or before this court, the seizure of the proceeds by the Department of Revenue. The district attorney's failure to designate the property as needed evidence or act in any way to deny release of the proceeds, establishes conclusively that the district attorney permitted release of the proceeds to the Department of Revenue under N.C.G.S. § 15-11.1(a). Therefore, the trial court was without authority to compel the Department to remit these funds. We also note that the taxpayer neither objected to the assessment nor demanded refund of the taxes paid. In fact, neither the defendant nor the school board contends before this court that they are entitled to the proceeds.

For the foregoing reasons, we reverse the trial court's order. Because we find the district attorney's release of the proceeds under N.C.G.S. § 15-11.1(a) to be controlling, we do not address the State's remaining arguments.

Judge JOHNSON concurs.

Judge EAGLES dissents with separate opinion.

Judge EAGLES dissenting.

The majority opinion states that this is not a forfeiture case. I disagree and respectfully dissent.

Article IX, section 7 of the North Carolina Constitution provides that:

All moneys, stocks, bonds, and other property belonging to a county school fund, and the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools.

N.C. Const. Art. IX, § 7. Our Supreme Court has recognized the mandatory nature of this provision, holding that when penalties or fines are recovered by a public authority "the disposition of such recovered fines or penalties comes within the constitutional provi-

sion under consideration, and [the funds] may not be turned awry from the prescribed constitutional course." *Shore v. Edmisten, Atty. General,* 290 N.C. 628, 636, 227 S.E.2d 553, 560 (1976) (quoting *State ex rel. Rodes v. Warner,* 197 Mo. 650, 664, 94 S.W. 962, 966 (1906)). The same analysis must apply to monies collected by way of forfeiture. Accordingly, funds collected by way of forfeiture may "not be diverted awry from the prescribed constitutional course." *Id.*

The question then is whether the Department of Revenue ("DOR") or the District Attorney in this case may, by action or omission to act, defeat the mandate of Article IX, section 7. The majority opinion focuses on the fact that the money in question in this case was initially seized as evidence. Characterizing the money as potential evidence only, the majority asserts that G.S. 15-11.1(a) is dispositive in that it specifically authorizes the District Attorney to "release any property seized pursuant to his lawful authority if he determines that such property is no longer useful or necessary as evidence in a criminal trial and he is presented with satisfactory evidence of ownership." G.S. 15-11.1(a) (1994). Following the majority's view, the District Attorney, in heeding the DOR's demand, could almost always circumvent forfeiture and effectively allocate the funds other than to the county school fund as is required by Article IX, section 7.

The majority's holding impermissibly elevates G.S. 15-11.1 (dealing with seizure and disposition of evidence generally) to a status greater than G.S. 90-112 which focuses on drug-related forfeitures. Under the majority opinion, when money or property is initially seized as evidence, the forfeiture provision could be utilized only in situations in which the District Attorney retains control of the money as evidence until judgment is entered by the court. This interpretation would artificially limit the application of Article IX, section 7 and of G.S. 90-112 to evidence that was actually necessary for trial and actually held by the District Attorney until judgement: Any monies not held as evidence for trial could be garnished by the DOR or released pursuant to G.S. 15-11.1 upon application of any party "entitled to possession." While I do not dispute that the DOR properly assessed the tax in this case and was accordingly entitled, as against defendant, to possession of the seized funds, I do not believe that the assessment and possession by the DOR ends the inquiry with regard to forfeiture and ultimate disposition of the seized funds.

Rather, I believe that the DOR properly can be characterized in this case as a "law-enforcement agency having custody of money . . . ."

G.S. 90-112(d1) (1989). As such, the DOR would lawfully retain custody of the seized funds pending the ultimate disposition of the case as to forfeiture or pending the outcome of any challenge by defendant to the DOR's assessment.

The majority here would allow the DOR to retain the seized funds, despite their being subject to court-ordered forfeiture and ultimately forfeited, because the funds were initially seized as evidence. Presumably, the majority might hold differently if the funds were seized initially pursuant to the forfeiture statute itself. I find this distinction untenable. The initial seizure is most often made by law enforcement officers in the field. Law enforcement officers should be concerned primarily with collecting and safeguarding all necessary evidence, rather than making on-site legal determinations as to whether particular property or money is subject to forfeiture pursuant to G.S. 90-112, as well subject to seizure as evidence of a crime. A constitutional mandate should not be defeated by virtue of a technical characterization made by the seizing officer or by the District Attorney.

The only characterization that is pertinent is whether, having satisfied the requirements of G.S. 90-112(a), the funds "shall be subject to forfeiture . . . ." G.S. 90-112(a) (1989). It is irrelevant under which authority the law enforcement officer initially seized the money. G.S. 90-112(b) merely provides additional authority to seize money or property subject to forfeiture that might not otherwise be subject to seizure under other statutes. The language of G.S. 90-112 clearly does not contemplate that the statute's application would be limited to situations where the initial seizure was made pursuant to G.S. 90-112(b). In fact, G.S. 90-112(c) specifically covers "property taken *or detained* under this section . . . ." G.S. 90-112(c) (1989) (emphasis added). The "or detained" language would not be necessary if the General Assembly had not intended G.S. 90-112 to apply to money or property initially seized under other authority but later recognized to fall within the purview of G.S. 90-112(a).

If the funds in question are found to be within the purview of G.S. 90-112(a) and are accordingly ordered forfeited, then G.S. 90-112(d1) and Article IX, section 7 of the Constitution are controlling. G.S. 90-112(d1) states that "the law-enforcement agency having custody of money that is forfeited pursuant to this section shall pay it to the treasurer or proper officer authorized to receive fines and forfeitures to be used for the school fund of the county in which the money was

seized." G.S. 90-112(d1) (1989). This language when read in light of the constitutional mandate is controlling. These funds "may not be turned awry from the prescribed constitutional course." *Shore,* 290 N.C. at 636, 227 S.E.2d at 560 (1976) (quoting *State ex rel. Rodes v. Warner,* 197 Mo. 650, 664, 94 S.W. 962, 966 (1906)).