**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FREDERICK H. QUARLES,
Plaintiff-Appellant,

v.

No. 95-1929

HUGH O. MILLER; LAWRENCE W.
BURKS,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CA-95-21-C, BK-95-6-A)

Argued: April 5, 1996

Decided: June 10, 1996

Before RUSSELL and MOTZ, Circuit Judges, and LAY,
Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Russell and Senior Judge Lay joined.

_____

**COUNSEL**

**ARGUED:** Roy David Bradley, Madison, Virginia, for Appellant.
Francis McQuaid Lawrence, ST. JOHN, BOWLING & LAW-
RENCE, Charlottesville, Virginia, for Appellees.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The sole issue presented in this appeal is whether a final state court judgment obtained by a foreign corporation is void and thus subject to collateral attack because the corporation transacted business in Virginia without the certificate of authority required by state law. The bankruptcy court found, and the district court upheld the finding, that the final state court judgment was not for this reason subject to collateral attack as void. We affirm.

I.

In 1986, Hugh O. Miller, as vice president of Colonial Electric Company, executed a contract in Charlottesville, Virginia with Frederick H. Quarles, in his capacity as vice president of Commonwealth Capital Corporation. Commonwealth agreed to arrange financing for Colonial's real estate project in Hilton Head, South Carolina, and paid Quarles $65,000 in connection with the project. Colonial is a South Carolina corporation, which has never obtained a certificate of authority to transact business in Virginia.

When Commonwealth failed to fulfill Colonial's expectations, Miller and Lawrence H. Burks (hereafter appellees), individually and as assignees of Colonial, filed suit against Commonwealth and Quarles in Charlottesville Circuit Court. The appellees obtained a judgment against Commonwealth but not against Quarles personally. All parties appealed. The Virginia Supreme Court held that in addition to Commonwealth's liability, Quarles was personally liable to the appellees. See Miller v. Quarles, 410 S.E.2d 639 (Va. 1991).

For this reason, appellees, as judgment creditors, then filed suit against Quarles in the Charlottesville Circuit Court, asserting that he had fraudulently conveyed four properties in an effort to frustrate collection of their judgment. On January 7, 1994, the state court held that Quarles had fraudulently conveyed the properties and entered an order directing the sale of those properties. During the next two months, Quarles filed three separate lawsuits against the appellees, all

2

relating to the Hilton Head project, and the third requesting an injunction against the sale of these properties.

In October, 1994, when no relief was forthcoming from the state court, Quarles filed a Chapter 11 bankruptcy petition. The bankruptcy court lifted the automatic stay to allow the parties to complete their litigation in state court and to permit Quarles' properties to be sold pursuant to the January 7, 1994 Charlottesville Circuit Court order. On January 2, 1995, Quarles amended his state court pleadings to claim that the judgment against him was void because Colonial never obtained a certificate of authority to transact business in Virginia. This argument had never been previously asserted. On January 18, 1995, the state court denied Quarles' request to enjoin the scheduled sale of his properties.

Quarles filed an adversary proceeding in the bankruptcy court to contest the validity of the appellees' judgment. In a well reasoned opinion, the bankruptcy court (Anderson, J.) granted appellees summary judgment, holding that the state court judgment is not subject to collateral attack as void, and so refusing to invalidate the lien and block the confirmation of the foreclosure of Quarles' real property. In an equally careful opinion, Judge James H. Michael, Jr. affirmed that decision and dismissed the appeal.*

II.

Quarles seeks to lodge a collateral attack on a final state court judgment. It is well established that "[i]n the absence of fraud, accident or surprise, a judgment, when entered and no appeal taken, is conclusive, even though the judgment is manifestly wrong in law or fact." Carpenter v. Ingram, 146 S.E. 193, 195 (Va. 1929). "A void judgment is one that has been procured by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties." Rook v. Rook, 353 S.E.2d 756, 758 (Va. 1987) (citations omitted).

_____

*The above statement of the facts is largely based on Judge Michael's opinion.

3

Although Quarles does not allege fraud, or contest the state court's jurisdiction over the parties or the subject matter, he still maintains that the state court judgment is unenforceable. Quarles asserts that appellees obtained their judgment against him in violation of a Virginia statute, Virginia Code § 13.1-758, which provides that a foreign corporation doing business in Virginia may not maintain an action in a Virginia court until it has obtained a certificate of authority. See Va. Code Ann. § 13.1 758 (Michie 1993). This statute, he claims, makes the state court judgment "not simply voidable, but absolutely void, since it was obtained in violation of Virginia State law." Brief of Appellants at 3.

Section 13.1-758 provides in pertinent part:

> § 13.1-758. Consequences of transacting business without authority.
>
> A. A foreign corporation transacting business in this Commonwealth without a certificate of authority may not maintain a proceeding in any court in this Commonwealth until it obtains a certificate of authority.
>
> B. The successor to a foreign corporation that transacted business without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in any court in this Commonwealth until the foreign corporation or its successor obtains a certificate of authority.
>
> C. A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court shall further stay the proceeding until the foreign corporation or its successor obtains the certificate.
>
> . . .
>
> E. Notwithstanding subsections A and B of this section, the failure of a foreign corporation to obtain a certificate of

4

authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this Commonwealth.

Thus, although § 13.1-758 provides that a court may stay ongoing proceedings to determine if a foreign corporation has obtained the required certificate, the statute does not suggest that a final judgment that is obtained by a foreign corporation transacting business without a certificate can be enjoined on this basis.

Nevertheless, Quarles maintains that Colonial's failure to comply with § 13.1-758 was an illegal act, which renders the judgment against him void. His sole authority for this position is Moore v. Northern Homes of Pa., 80 F.R.D. 278 (W.D. Va. 1978). In Moore, the plaintiff moved to dismiss a counterclaim filed by the defendant foreign corporation, because the corporation had not obtained a certificate of authority. The plaintiff's motion relied on Virginia Code § 13.1-119 (repealed 1986), a predecessor to §13.1-758. The corporation maintained the plaintiff had waived the right to make this motion because it had failed to do so in the time required by the Fed. R. Civ. P. 12(h). Because Moore was a diversity case, the district court looked to state law to determine if the motion to dismiss was timely. See Woods v. Interstate Realty Co., 337 U.S. 535 (1949); Rock-Ola Mfg. Corp., 249 F.2d 813 (4th Cir. 1957). After examining Virginia law, the district court concluded that the motion was timely; that the plaintiff's reliance upon § 13.1-119 was a defense that could be raised at any time during ongoing litigation without being waived. Id. at 282.

In reaching this conclusion, the Moore court relied on two Virginia cases. In the first, Video Eng'g Co. v. Foto-Video Elecs., Inc., 154 S.E.2d 7 (Va. 1967), the trial court had dismissed an action because the plaintiff did not obtain a certificate of authority until after the initiation of its lawsuit. The Virginia Supreme Court reversed, explaining "[w]hen plaintiff obtained a certificate of authority to engage in business in Virginia after instituting this action, the barrier set out in Code § 13.1-119 was removed and plaintiff was afforded access to the court below to continue its action against the defendant." Id. at 9-10. The second case upon which the Moore court relied, Phlegar v. Virginia Foods, Inc., 51 S.E.2d 227 (Va. 1949) held a plaintiff's failure

5

to comply with a similar statute requiring a certificate of authority to do business under an assumed name:

> . . . does not render the cause of action illegal. It is not the right to begin the action, but the right to maintain it, that is withheld for failure to comply with its terms. It takes no right away from the offending party after compliance. When its terms are met, the barriers theretofore existing are removed.

Id. at 229-30.

After quoting these cases, the Moore court made the following statement, upon which Quarles heavily relies:

> It is clear from the language of the decisions quoted above that the prohibition of non-complying corporations maintaining lawsuits in Virginia courts is not so much a defense available to a litigant's adversaries, and therefore plausibly waivable, but is rather an absolute bar to the offender's use of the courts to press its claim until compliance with the statute is effected.

Moore, 80 F.R.D. at 282. Based upon this conclusion, the Moore court ruled that the plaintiff's motion to dismiss did not come too late. Id. The court did not dismiss the case, however; instead, it gave the defendant thirty days to obtain the necessary certificate of authority. Id.

The holding in Moore -- permitting a party to force a corporation to comply with the certificate of authority requirement before allowing the corporation to proceed with ongoing litigation -- is entirely consistent with § 13.1-119 (and § 13.1-758) and the relevant Virginia case law. However, there is no support in the statute or case law for the theory that Quarles espouses, based on Moore dicta. Relying on the Moore court's statement that the statute is an "absolute bar to the offender's use of the courts," 80 F.R.D. at 282, Quarles argues that failure to comply with the statute must make a final judgment obtained by an "offender" void, even though the opposing party never

6

raised this objection prior to judgment. The statute itself does not so provide and while the Virginia Supreme Court has held that a party can be required to obtain a certificate prior to proceeding in ongoing litigation, Video Eng'g, 154 S.E.2d at 9-10; Phlegar, 51 S.E.2d at 230, it has never held that this can be a basis for disregarding a final judgment. Indeed, in Phlegar the court clearly indicated to the contrary, noting that failure to comply with a certificate of authority statute "does not render the cause of action illegal." 51 S.E.2d at 229-30.

The critical distinction between Video Eng'g, Phlegar, and Moore, on one hand, and the instant case, on the other, is the entry of a final judgment. In Video Eng'g, Phlegar, and Moore the litigants raised the failure to comply with the certificate of authority statute before the trial court entered judgment; Quarles never raised this defense until after the state court had entered a final judgment. As Judge Michael explained:

> Those cases dealt with the timing of when the defense could be raised before judgment, and none of them anticipated a collateral attack upon a previously entered judgment. Those cases, while relevant, do not control the outcome of the instant case. They do not create an exception to Virginia's rule regulating when final judgments are subject to collateral attack. The Appellant had a chance to raise § 13.1-758 with the trial court or on appeal with the Virginia Supreme Court, and he failed to do so. Absent fraud or lack of jurisdiction, he simply may not attack the judgment collaterally.

(emphasis in original).

This conclusion is in accord with authority throughout the country. See, e.g., 18 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 8628 (perm. ed. rev. vol. 1991 & Supp. 1994), and cases cited therein; HARRY G. HENN & JOHN R. ALEXANDER, LAWS OF CORPORATIONS § 101 at p. 233 (3d ed. 1983) ("The Corporation's disability to sue must be promptly asserted to avoid waiver of the defense"), and cases cited therein; see also Wetzel & T. Ry. Co. v. Tennis Bros. Co., 145 F. 458, 463 (4th Cir. 1906) (when interpreting a similar West Virginia statute, we opined that it did not "operate to end a suit otherwise regularly instituted or to destroy a right in

7

other respects validly existing; instead, since the party objecting to the out of state corporation's failure to qualify waited until after trial on the merits "it was too late . . . to avail itself of such a defense."); United States Trust Co. v. DiGhello, 425 A.2d 1287, 1288 (Conn. 1979) (Defendant attempted to reopen a judgment of foreclosure based on a similar statute. The court denied his claim, stating that "[s]uch a claim is but a voidable defect, waived, if not presented by a defendant in a timely manner") (citation omitted).

Moreover, in Wackwitz v. Roy, 418 S.E.2d 861, 863-64 (Va. 1992), the Virginia Supreme Court recently held that a similar statute, which bars nonresident administrators from maintaining wrongful death actions, is not jurisdictional and so this defect may not be raised for the first time on appeal. Phlegar makes it clear that a corporation's failure to qualify as required by § 13.1-758 is similarly not jurisdictional. See 51 S.E.2d at 229-30. See also 4B MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA, Corporations § 290 at p.619 (1986).

A court having jurisdiction over the parties and subject matter issued a valid, final judgment in the appellees' favor against Quarles. He cannot, years after the fact, assert that this judgment is void because of the failure of his adversaries to comply with a certificate of authority statute.

III.

For these reasons, the order of the district court is

AFFIRMED.