# CIRCUIT COURT OF FAIRFAX COUNTY

Transurban

v.

Charles Gregory D'Arco

February 3, 2016

Case Nos. MI-2014-2761, MI-2014-2762,
MI-2014-2763, MI-2014-2764

By Judge Robert J. Smith

This matter came before the Court on July 23, 2015, on the defendant's Motion To Dismiss for Lack of Jurisdiction and Constitutionality. Charles Gregory D'Arco appeals his convictions in the General District Court of Fairfax County for violating Va. Code § 33.1-56. His cases can be summarized as follows:

1. MI2014-2761, $.55 toll, $100 administrative fees (apparently, not imposed) and a $50 civil penalty. The offense occurred on June 9, 2013, at 4:11. The civil penalty was based on one offense within two years.

2. MI2014-2762, $.55 toll, $100 administrative fees and a $250 civil penalty. The offense occurred on June 10, 2013, at 2:56 P.M. The civil penalty was based on two offenses within two years.

3. MI2014-2763, $.55 toll, no administrative fees ($100 crossed off), and a $500 civil penalty. The offense occurred on June 12, 2013, at 3:47 P.M. The civil penalty was based on three offenses within two years.

4. MI2014-2764, $.55 toll, $100 administrative fees, and a $1,000 civil penalty, with a notation made by someone unknown that the administrative fees were waived. The offense occurred on June 13, 2013, at 4:19 P.M. The civil penalty was based on four offenses within two years.

All offenses were memorialized on Form DC-287 (01/10).

The defendant attacks his convictions, using two general theories, procedural and constitutional.

For the reasons that follow, I deny the Defendant's Motion To Dismiss.

## Procedural Theories

Defendant contends that the judgments of the General District Court are void because the Plaintiff, Transurban, had not filed a fictitious name certificate. The Defendant is correct. The Plaintiff, however, is correct in its argument that the subsequent filing of the fictitious name certificate during the pendency of the appeal to this court corrects the deficiency.

Virginia Code § 59.1-69 provides:

> No person, partnership, limited liability company, or corporation shall conduct or transact business in this Commonwealth under any assumed or fictitious name unless such person, partnership, limited liability company, or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the names of each person, partnership, limited liability company, or corporation owning the same, with their respective post-office and residence addresses (and, (i) when the partnership or limited liability company is a foreign limited partnership or limited liability company, the date of the certificate of

registration to transact business in this Commonwealth issued to it by the State Corporation Commission, or (ii) when the corporation is a foreign corporation, the date of the certificate of authority to transact business in this Commonwealth issued to it by the State Corporation Commission), and file the same in the office of the clerk of the court in which deeds are recorded in the county or city wherein the business is to be conducted.

Virginia Code § 59.1-76 provides:

> The failure of any person or corporation to comply with the provisions of this chapter shall not prevent a recovery by or against such person or corporation, in any of the courts in this Commonwealth on any cause of action heretofore or hereafter arising, *but no action shall be maintained in any of the courts in this Commonwealth* by any such person, corporation, or his or its assignee or successor in title *unless and until the certificate required by this chapter has been filed.*

(Emphasis added.)

The language of the statute clearly states that no action shall be maintained until the certificate required by the chapter is filed. The requirement to file the certificate, and the impact of the failure to do so on the judgment, was addressed in *Phlegar v. Virginia Foods, Inc.*, 188 Va. 747, 51 S.E.2d 227 (1949).

*Phlegar* involved a predecessor statute to Va. Code § 59.1-76, *viz.*, Va. Code Ann. § 4722(1) (1942). However, the language at issue was identical to the language of § 59.1-76:

> No action shall be maintained in any of the courts in this State by any such person, firm or corporation or his or its assignee or successor in title unless and until the certificate required by this act has been filed.

*Phlegar*, 188 Va. at 750.

Plaintiff Phlegar had brought an action but had not filed a fictitious name certificate for her business. The defendants "appeared and filed pleas of the general issue." *Id.* at 748. The circuit court granted the motion and dismissed the case. (While perhaps interesting, the arcane world of Virginia civil pleading of the mid-twentieth century does not control our analysis here.)

The Supreme Court held: "It is not the right to begin the action, but the right to maintain it, that is withheld for failure to comply with its terms. It takes no right away from the offending party after compliance. When its

terms are met, the barriers theretofore existing are removed." *Id.* at 751. Better late than never, succinctly states the holding of *Phlegar.*

There can be little doubt that the rationale of *Phlegar* applies to the issue in this case. Once Transurban filed a fictitious name certificate on March 3, 2015 (after noting the appeal to this Court), it therefore had the right to maintain the action in this Court.

Interestingly, notwithstanding the clear, controlling application of *Phlegar,* Transurban asserts other theories it apparently deemed more convincing, having given to this (meritorious) issue only a small blurb in its brief. Those issues should be addressed for the benefit of all parties.

First, Transurban's argument that "Transurban" is not a fictitious name is without merit. Transurban argues that the name Transurban is merely a variant and that going to the webpage www.expresslanes.com, which is written on the summons, identifies the correct operator of the HOT Lanes as "Transurban (USA) Operations Inc."

Transurban relies on *Tate v. Atlanta Oak Flooring Co.,* 179 Va. 365, 18 S.E.2d 903 (1942), to support its position that Transurban is merely a variant of the true corporate name. This reliance is misplaced. Transurban also cites *Matthews v. Barfield,* 179 Va. 691, 20 S.E.2d 497 (1942), which, far from being helpful, essentially says that the Court follows the holding of *Tate.*

In *Tate,* the sole owner of the plaintiff was one A. E. Tate. The trade name of the company was A. E. Tate Lumber Company. According to the Court, the name A. E. Tate Lumber Company certainly disclosed the true name of the individual transacting the business. *Tate,* 179 Va. at 368. The Court said, "The name, without assumption of any sort, reveals the identity of the individual transacting the business and discloses its nature." *Id.* at 368-69.

Here, Transurban maintains that bringing the action as "Transurban" adequately describes the real company, *viz.,* "Transurban (USA) Operations, Inc." Defendant, in his brief, points out that the Delaware Department of State, Division of Corporations, identifies 12 entities containing the name Transurban. The Plaintiff does not contest this assertion. *Tate* stands for the proposition that the name used in the lawsuit must, in and of itself, give adequate notice of the correct name of the entity bringing the suit. It is not enough that the defendant can go to a website and perhaps find the correct name.

Let us speculate for a moment. If this Defendant (or any other person or company, for that matter) had brought an action against "Transurban," would Transurban (USA) Operations, Inc., have answered, appeared, and defended the suit without interposing the objection that the incorrect entity had been sued? I think not.

Next, Transurban argues that even if its fictitious name was not properly registered, the judgments were not void. In support of this proposition,

Transurban relies on *Quarles v. Miller,* 86 F.3d 55 (4th Cir. 1996). A reading of *Quarles* indicates, frankly, that Transurban may be correct. However, this argument is not relevant to this case.

Transurban takes two irreconcilable positions in its brief. In the beginning, Transurban takes the position that the judgment from the General District Court is void, all because of the Defendant's appeal; therefore, Transurban argues, he should not be heard to argue that the judgments below were void. Then, on page three, Transurban argues that the judgments were not void solely because Transurban had not filed the requisite fictitious name certificate.

Transurban cannot have it both ways. As I noted above, Transurban's reading and reliance on *Quarles* may very well be correct; however, I do not have to decide if that is correct, for as soon as the Defendant appealed the judgment, the parties returned to the starting line.

An appeal from a general district court, as Transurban notes on page one of its brief, and, as we all know, is a trial *de novo.* Virginia Code § 16.1-132. On appeal to a circuit court from a general district court, unlike an appeal from a circuit court to the court of appeals or to the Supreme Court of Virginia, the circuit court does not concern itself with errors of law that might occurred in the general district court. It is as if the trial in general district court had never occurred. *Ledbetter v. Commonwealth,* 18 Va. App. 805, 447 S.E.2d 250 (1994). The penalties in this case are civil, but the proceeding follows rules of criminal procedure. The general district court hears these cases on the traffic docket, where the procedural rules of criminal trials control the trial, and the standard of proof is beyond a reasonable doubt.

So there is no doubt, I am not addressing the issue of whether the failure to file a fictitious name certificate is a question of subject matter jurisdiction. This proceeding is a trial *de novo* and Transurban has now filed the requisite fictitious name certificate, which, I have earlier decided, negates any issue of whether the Plaintiff may proceed in this court.

The remaining "procedural" issues are related. The Defendant argues that the summons is invalid because it is not signed, pursuant to Virginia Code § 8.01-271.1. The plaintiff replies that it need not sign the pleadings because it issues the summonses with the authority of a conservator of the peace and the summonses are not required to be filed with a Virginia tribunal as allegations of fact.

Virginia Code § 33.2-503,[1] HOT Lanes Enforcement, prescribes the manner of executing the summonses in these cases. I do not believe the

---

[1] This Defendant was tried and convicted under Va. Code § 33.1-56.3, now repealed and replaced by Va. Code § 33.2-503. A review of the two statutes indicates that they are identical, other than the reference in § 33.2-503 to "chapter" whereas § 33.1-56.3 refers to "article."

General Assembly intended for these cases to fall within the ambit of Va. Code § 8.01-271.1.

I reach this conclusion after reading the methods of executing the summons delineated in Va. Code § 33.2-503. The statute provides two methods of enforcement. First, there is the traditional police officer stop of the offender when the officer observes the violation. In those instances, the officer executes the summons by giving the violator the summons on a form prescribed by the Supreme Court of Virginia. Second, the HOT Lanes operator, using for the summons a form prescribed by the Supreme Court of Virginia, shall mail the summons to the offender.

In light of the fact that the General Assembly prescribed a specific method to execute the summons, and presumably, the General Assembly is cognizant of Va. Code § 8.01-271.1, I conclude that the General Assembly did not mean to include these summonses within the scope of Va. Code § 8.01-271.1.

### Constitutional Theories

Having disposed of the procedural issues, I now turn my attention to the constitutional issues. Although I deny the Defendant's request to hold that the enforcement scheme is unconstitutional, the issue is of sufficient import to be discussed. Clearly, a $1,000 civil penalty for not paying a $.55 toll, albeit a fourth violation within two years of the second offense, raises issues about the excessiveness of the penalty scheme. One primary principle guides the constitutional analysis: an action of the General Assembly is presumed constitutional. *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 392 S.E.2d 817 (1990). The party challenging the statute has the burden of proving its unconstitutionality and any reasonable doubt about its constitutionality must be resolved in favor of the statute being upheld. *Id.*

The Defendant asserts that the fine scheme codified in Va. Code § 33.2-503 violates Article 1, § 9, of the Virginia Constitution:

> That excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; that the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of invasion or rebellion, the public safety may require; and that the General Assembly shall not pass any bill of attainder, or any *ex post facto* law.

The Defendant, pointing out the dearth of case law interpreting Article 1, § 9, relies on cases interpreting the Eighth Amendment to the Constitution of the United States:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The Plaintiff initially relies on *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989), to argue that the fine scheme is constitutional. This reliance is misplaced.

*Browning-Ferris* was a civil jury trial. The jury had awarded what the defendants felt were excessive damages. The defendants appealed, arguing that the punitive damages violated the Eighth Amendment to the Constitution of the United States. The Supreme Court said, "Although this Court has never considered an application of the Excessive Fines Clause, it has interpreted the Amendment in its entirety in a way, which suggests that the Clause does not apply to a civil jury award of punitive damages." *Id.* at 263.

Inherent in the Plaintiff's reliance on *Browning-Ferris* is the assertion that it presents these cases in a private capacity. This assertion is totally without merit. Transurban appears in these matters as the entity that the *government* has selected to pursue governmental interests. The cases appear on the general district court traffic docket where the rules of criminal procedure control and the standard of proof is beyond a reasonable doubt. It is not difficult to imagine cases in which the defendant could challenge the stop (if it was an officer who initiated the stop), and surely this falls within the ambit of the criminal law. Indeed, in one capacity, mailing the summonses, Transurban is a conservator of the peace. Va. Code § 33.2-503(2)(c). There can be no doubt that Transurban appears in these matters in a prosecutorial function.

By finding that Transurban appears in a prosecutorial function, I have simultaneously decided that there exists no unconstitutional delegation of prosecutorial discretion as argued by the Defendant.

The civil penalties in these cases are punishment. The graduated increase in the amount of the penalty depending upon the number of offenses indicates a clear legislative intent to deter and punish the conduct.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian,* 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). In *Bajakajian,* the Supreme Court, for the first time, announced a test to determine if a fine was constitutionally excessive: a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. *Id.* at 334.

The Supreme Court recognized two considerations in determining if a forfeiture is excessive: (1) deference to the legislature; and (2) any judicial determination of excessiveness will be imprecise. *Id.* at 330. One judge's grossly excessive fine might be another judge's slap on the wrist; that is the nature of our system.

Is a $1,000 fine grossly disproportionate for not paying a $.55 toll? This does not properly phrase the question. In *Ewing v. California,* 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2002), the defendant had been sentenced to twenty-five years to life under the California "three strikes" law. His qualifying offense was the theft of three golf clubs, each worth $399.

The Supreme Court stated that Ewing claimed his punishment was grossly disproportionate for "shoplifting three golf clubs." *Id.* at 28. But, as the Supreme Court said, the gravity of the offense was shoplifting three golf clubs after previously being convicted of at least two violent or serious felonies. *Id.*

In other words, it was not solely the qualifying offense that was determinative, but rather the qualifying offense taken together with his previous record. Here, the issue is not whether a $1,000 fine is a grossly disproportionate punishment for not paying a $.55 toll, but, rather, whether a $1,000 fine is a grossly disproportionate punishment for a fourth offense within two years.

The General Assembly of Virginia has made the determination that a $1,000 civil penalty is the appropriate sanction for someone who has committed the same offense at least three times previously. That determination is solely within the purview of the legislature.

Giving deference to the judgment of the General Assembly, which I must, I find that the fines levied in this case are not grossly disproportionate to the offense.

The Defendant also argues that the enforcement scheme is unconstitutional because it punishes Virginia residents more harshly than non-Virginia residents. The Defendant is a resident of Maryland, according to the address on the summonses. If anything, the Defendant is the beneficiary of the alleged discrimination. "In an equal protection claim, only 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct suffer injury" sufficient to give them standing. *Wilkins v. West,* 264 Va. 447, 459, 571 S.E.2d 100 (2002). Defendant has suffered no such injury and does not have standing to address this argument.

Finally, the Defendant's claim that the statute denies him substantive due process does not persuade me. This argument addresses only events that might happen. Such speculation does not, it seems to me, warrant the drastic remedy of this Court declaring the HOT Lanes statute unconstitutional.

For the foregoing reasons, the defendant's Motion To Dismiss for Lack of Jurisdiction and Constitutionality is denied.