## CIRCUIT COURT OF FAIRFAX COUNTY

Metropolitan Washington
Airports Authority

    v.

Sara Elizabeth Hagarty,
f/k/a Sara Elizabeth Mies

Case Nos. MI-2015-1557 through MI-2015-1724

BY JUDGE MICHAEL F. DEVINE

February 22, 2016

These matters come before the Court on Mrs. Hagerty's[1] pretrial Motion To Dismiss. Mrs. Hagerty raises non-constitutional and constitutional grounds in support of her motion. The Court heard argument on the Motion on January 6, 2016. At that time, the Court, by oral ruling, rejected Mrs. Hagarty's non-constitutional grounds. The non-constitutional grounds raised in the Motion To Dismiss were: (1) that the Court lacked jurisdiction because the summonses were issued in the name of Dulles Toll Road, which is not a legal entity; and (2) that the summonses were invalid because they lacked an authorized signature and, thus, violated Virginia Code § 8.01-271.1. At the hearing on January 6, 2016, the Court granted Plaintiff's motion to correct a misnomer and substituted the name "Metropolitan Washington Airports Authority" ("MWAA") for "Dulles Toll Road" as the Plaintiff in these cases. The Court took under advisement the constitutional arguments in support of the Motion. The Court, having had sufficient time to review the arguments of counsel and the authorities offered in support of their respective positions, is now prepared to rule.

*Factual Background*

Mrs. Hagerty is presently charged with 157 separate violations of Virginia Code § 46.2-819.1 for failure to pay tolls while using the Dulles Toll Road. MWAA agreed to dismiss another 11 cases because the summonses were not issued within one year of the date of the alleged toll violation. The Dulles Toll Road is owned and operated by the Metropolitan Washington Airports Authority. The violations are alleged to have occurred on specific dates, spanning January 7, 2013, to October 17, 2013. The unpaid tolls range from $1.00 to $1.75. Of the remaining violations, one is alleged as first offense, carrying a fine of $50. One offense is alleged to be a second offense within one year from the first offense, carrying a fine of $100. One offense is alleged to be a third offense within two years from the second offense, carrying a fine of $250. Lastly, 154 offenses are alleged to be fourth or subsequent offenses within three years from a third offense, each carrying a fine of $500. In addition to the fines, each offense seeks an administrative fee of $100, plus an assessment of court costs, pursuant to Va. Code § 46.2-819.1(B) and (C).

The constitutional arguments offered by Mrs. Hagerty in support of the Motion To Dismiss are: (1) the fines sought to be imposed are excessive and thus violate Article 1, Section 9, of the Virginia Constitution; (2) the statutory scheme violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it treats Virginia vehicle owners differently than out-of-state owners; (3) the statutory scheme violates the

---

[1] Mrs. Hagerty was known as Sara Elizabeth Mies prior to her marriage.

Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution because it impermissibly delegates prosecutorial discretion to MWAA; and (4) the statutory scheme violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it makes the owner of a vehicle liable for the conduct of others who drive the owner's vehicle without paying the required toll, and failure to pay is not excused when the result of a technological failure. The Court is not persuaded that the statutory scheme offends any provision of the Virginia Constitution or the United States Constitution, and, therefore, the Motion To Dismiss is denied.

### Analysis

The Court must apply certain well-settled principles when presented with a constitutional challenge to a statute. "[A]ll actions of the General Assembly are presumed to be constitutional." *Copeland v. Todd,* 282 Va. 183, 193, 715 S.E.2d 11, 16 (2011). There is, indeed, no stronger presumption known to the law. *FFW Enters. v. Fairfax Cnty.,* 280 Va. 583, 590, 701 S.E.2d 795, 799-800 (2010). Any doubt regarding a statute's constitutionality must be resolved in favor of its validity. *Montgomery Cnty. v. Virginia Dep't of Rail & Pub. Transp.,* 282 Va. 422, 435, 719 S.E.2d 294, 300 (2011). With these principles in mind, the Court will turn to the specific arguments made by Mrs. Hagerty.

### A. *Excessive Fines*

Mrs. Hagarty claims that fines imposed by Va. Code § 46.2-819.1 are excessive and thus violate Article 1, Section 9, of the Virginia Constitution. That section provides, in relevant part, as follows: "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . . ."

The Supreme Court of Virginia has on only a few occasions considered the extent to which the ban on excessive fines limits the power of the legislature to set — and of courts to impose — penalties for violations of the law. The Court also has provided guidance as to how a court can determine whether a particular fine offends this constitutional provision without simply substituting its judgment for that of the Legislature.

In *Southern Exp. Co. v. Commonwealth,* 92 Va. 59, 22 S.E. 809 (1895), the Appellant was fined $200 because it charged $1.00 to transport a package weighing less than one-half ounce a distance of twenty miles, which was an amount in excess of that authorized by law. The Supreme Court of Virginia held that the fine did not violate the ban on excessive fines in the Virginia Constitution. The Court explained:

The imposition and regulation of fines belongs to the Legislature, and to its discretion and judgment the widest latitude must be conceded. Fines are to be fixed with reference to the object they are designed to accomplish. The degree of criminality of the offence, or the illegality or impolicy of the act they are intended to punish or prevent, are elements that must enter into their consideration. The peace of society and the welfare of the people occasionally require that the Legislature shall create new offenses, and affix penalties for their violation, or alter the penalties for others already existing. What is to be the legislative guide, in the performance of this duty, but its sound judgment and the wisdom of experience? And how can the courts with reason or propriety question the action of the Legislature, or control or restrain its discretion, except where the minimum penalty is so plainly disproportioned to the offence or act, for the violation of which it is affixed, as to shock the sense of mankind? Bearing in mind the considerations which must affect the regulation of fines, and the discretionary power of the Legislature, how can the court say that the minimum fine prescribed [by the governing Code Section] is excessive? By what standard is it to determine this question? A fine that would prove efficacious in the case of an individual, and beyond which it would appear to be excessive to go, would be likely to prove ineffectual in the case of a corporation, with its aggregated wealth and power, and its disposition to act, oftentimes, in an arbitrary manner, because of the inability of private persons to contend against its illegal and wilful [sic] acts. The minimum fine prescribed by [the Code Section] cannot be declared to be excessive by any standard which the courts can apply, and this objection need not be further considered.

*Id.* at 66, 22 S.E. at 811.

The Supreme Court of the United States raised these same questions and reached the same conclusion 103 years later in applying the Excessive Fines Clause of the Eighth Amendment to the United States Constitution in *United States v. Bajakajian,* 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). Although the Eighth Amendment does not control the

outcome of this case,[1] because of the shared text[2] and history[3] of these two constitutional provisions, both MWAA and Mrs. Hagarty rely on Supreme Court of the United States decisions applying the Eighth Amendment in support of their arguments.

In *Bajakajian,* the Court explained that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334. In determining how disproportional to the gravity of an offense a fine must be in order to be deemed constitutionally excessive, the Supreme Court found two considerations to be particularly relevant. "The first, which we have emphasized in our cases interpreting the Cruel and Unusual Punishments Clause, is that judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id.* at 336 (citing *Solem v. Helm,* 463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *Gore v. United States,* 357 U.S. 386, 78 S. Ct. 1280, 2 L. Ed. 2d 1405 (1958)). "The second is that any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise. Both of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense, and we therefore adopt the standard of gross disproportionality articulated in our Cruel and Unusual Punishments Clause precedents." *Id.*

Thus, in order to find that a statute violates the ban on excessive fines, whether under Article 1, Section 9, of the Virginia Constitution or the Eighth Amendment to the United States Constitution, the fine must be "so plainly disproportioned to the offence [sic] or act, for the violation of which it is affixed, as to shock the sense of mankind," *Southern Exp. Co.,* 92 Va. at 66, 22 S.E. at 811, or, in other words, the fine must be grossly disproportional to the gravity of the offense.

---

[1] Mrs. Hagarty's excessive fines claim is made only under Article 1, Section 9, of the Virginia Constitution, and not the Eighth Amendment. The Supreme Court of the United States has never held that the Excessive Fines Clause of the Eighth Amendment is applicable to the States. *See McDonald v. City of Chicago, 561 U.S. 742, 765 n. 13, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).*

[2] The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines Imposed, nor cruel and unusual punishments inflicted." The only textual difference from Article 1, Section 9, is the substitution of the word "shall" for the word "ought."

[3] "The Eighth Amendment was based directly on Art. I, § 9, of the Virginia Declaration of Rights (1776), authored by George Mason. He, in turn, had adopted verbatim the language of the English Bill of Rights [of 1689]." *Solem v. Helm,* 463 U.S. 277, 285, n. 10, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). This same language also was proposed for inclusion in the Virginia Constitution by the Convention of 1788.

Mrs. Hagarty argues that the penalties imposed by Va. Code § 46.2-819.1(C) "bear[] neither a proportional nor articulable correlation to the toll to be collected[,]" and that "[t]he harm done by failing to pay a toll is even more 'minimal' than the harm in *Bajakajian* . . . ." Bajakajian attempted to leave the United States without reporting, as required by federal law, that he was transporting $357,144 of U.S. currency. *Bajakajian*, 524 U.S. at 324. (Motion To Dismiss at 15.) There are three flaws in this argument.

First, Mrs. Hagarty misstates the nature of most of the violations alleged to have been committed. As Judge Robert Smith recently observed in his opinion in *Transurban v. D'Arco*, 2016 Va. Cir. LEXIS 33 (Fairfax Cnty. Feb. 3, 2016) the offense alleged to have been committed is not merely failure to pay a toll; rather, it is the failure to pay a toll after having failed to do so a number of times previously.

Second, comparing the fine to the unpaid toll as the measure of proportionality inadequately accounts for the full nature of the harm caused by the alleged violations. That comparison ignores the fact that repeated violations undermine a significant source of funding for the construction, maintenance, and improvement of this region's transportation *infra*structure, beyond the mere $236.25 in lost toll revenue. Non-paying drivers add to congestion on the roadway to the detriment of toll-paying drivers. Also, when some drivers repeatedly use the road without paying, others will be less willing to pay tolls. Thus, toll violations undermine the value of the Dulles Toll Road to users as well as threaten the integrity of a toll-based funding mechanism as a means to meet transportation needs.

Lastly, Mrs. Hagarty's argument invites a misunderstanding of *Bajakajian*. In that case, the Supreme Court of the United States found that Bajakajian's offense of willfully failing to report the removal of $357,144 in currency from the United States caused minimal harm. 524 U.S. at 339. However, that was not the source of the constitutional problem. The constitutional problem was that there was no correlation between the amount forfeited and the harm that the Government would have suffered had the crime gone undetected. *Id.* at 337-39. As stated by the Court, "It is impossible to conclude, for example, that the harm [Bajakajian] caused is anywhere near 30 times greater than that caused by a hypothetical drug dealer who willfully fails to report taking $12,000 out of the country in order to purchase drugs." *Id.* at 339. Thus, the issue in *Bajakajian* was not the degree of harm caused by the offense; rather, the forfeiture penalty violated the Eighth Amendment because it bore no relationship to the reporting offense, and the amount of the penalty was determined by the fortuity of the amount of the unreported currency.

Properly understood, Mrs. Hagarty's conduct is, in fact, more harmful than Bajakajian's, which "caused no loss to the public fisc." *See Bajakajian*, 524 U.S. at 339. Also, the penalties sought to be imposed for the alleged

violations are proportional to the conduct charged. A fine of $50 for a first offense is substantially lower than the $250 maximum penalty provided by law for most minor traffic offenses. *See* Va. Code §§ 46.2-113 and 18.2-11(d). The enhanced fines of $100 and $250 for second and third repeat offenses likewise are within the range of punishment for most traffic offenses. The $500 penalty for a fourth or subsequent offense, while double that for most traffic offenses, is substantially less than the penalty imposed for serious traffic offenses, such as reckless driving, driving while intoxicated, or failure to stop after an accident, each of which carries a fine of up to $2,500 in addition to a jail sentence of up to 12 months. *See* Va. Code §§ 46.2-868; 18.2-270; 46.2-894; 18.2-11(d)

In addition, enhanced penalties aimed at deterring, rather than reforming, repeat offenders are a familiar aspect of Virginia law that has survived judicial scrutiny. *See, e.g., Ansell v. Commonwealth,* 219 Va. 759, 250 S.E.2d 760 (1979) (upholding enhanced penalties for subsequent violations of use or display of a firearm in the commission of certain felonies). It is certainly within the province of the Legislature to determine that a progressively greater penalty is required to deter repeated toll violations. Thus, the penalties imposed by Va. Code § 46.2-819.1 increase as the number of prior violations increase. Rather than having no relationship to the alleged unlawful conduct as in *Bajakajian,* the enhanced penalties in Va. Code § 46.2-819.1 are, in fact, directly proportional to the nature of the violation, the harm caused by it, and the goal of deterrence.

The Court finds that the fines authorized by Va. Code § 46.2-819.1 are not "so plainly disproportioned to the offence [sic] or act, for the violation of which [they are] affixed, as to shock the sense of mankind," nor are they grossly disproportional. *See Southern Exp. Co. v. Commonwealth,* 92 Va. at 66, 22 S.E. at 811. Therefore, the Court holds that these fines are not prohibited by Article 1, Section 9, of the Virginia Constitution. *See also Transurban v. D'Arco, supra,* (holding that the escalating penalties of up to $1,000 imposed by the predecessor to Va. Code § 33.2-503 on repeat toll violators using the High Occupancy Toll lanes do not violate Article 1, Section 9, of the Virginia Constitution).

## B. *Equal Protection*

Mrs. Hagarty next argues that Va. Code § 46.2-819.1 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it imposes greater penalties on Virginia residents than on residents of other states whose vehicles are not registered in Virginia. Sub-paragraph F provides that the Commissioner of the Department of Motor Vehicles shall refuse to issue or renew any vehicle registration or license plate of a vehicle driven in the commission of a toll violation until all court-imposed penalties, fees, and unpaid tolls have been paid. This provision affects only vehicles registered in Virginia. MWAA responds

that Mrs. Hagerty lacks standing to raise this claim at this time because no fine, penalty, or fee has been imposed upon her, and, thus, her vehicle registration is not affected. MWAA further argues that Va. Code § 46.2-819.1 is rationally related to a legitimate governmental purpose, and, thus, does not violate the Equal Protection Clause. The Court agrees that Mrs. Hagarty lacks standing, and, therefore, the Court need not consider MWAA's other argument.

Standing for an equal protection claim requires an injury in fact. *Wilkins v. West,* 264 Va. 447, 459, 571 S.E.2d 100, 106 (2002). "The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that [the person's] rights will be affected by the disposition of the case." *Westlake Props., Inc. v. Westlake Pointe Prop. Owners Ass'n, Inc.,* 273 Va. 107, 120, 639 S.E.2d 257, 265 (2007). A party asserting a claim "must demonstrate that his rights will be affected by the outcome of the case." *W. S. Carnes, Inc. v. Board of Supervisors,* 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996).

Mrs. Hagerty lacks standing at this time to raise an equal protection claim with regard to the renewal of her vehicle registration or license plate. Until penalties and fees are assessed by the Court, which are then left unpaid, renewal of her registration cannot be denied under Va. Code § 46.2-819.1(F). Until the Commissioner of the Department of Motor Vehicles refuses to renew Mrs. Hagarty's registration, she has suffered no injury in fact. Thus, any decision by this Court regarding the validity of this provision would have no effect on Mrs. Hagarty. Consequently, Mrs. Hagarty lacks standing to raise this equal protection claim.

## C. *Unconstitutional Delegation of Prosecutorial Discretion*

Mrs. Hagarty next claims that "the enforcement scheme delegates unfettered authority to [MWAA], a hybrid governmental authority not directly accountable to the Commonwealth of Virginia to prosecute and settle penalties without any standards or limits on how such authority is exercised." (Motion To Dismiss at 17.) In support of her claim, Mrs. Hagarty relies upon cases, each of which addresses the delegation of legislative, not executive authority. These cases, therefore, are inapposite and unpersuasive.

The prosecution of offenses is a function of the executive branch of government. *See In re Horan,* 271 Va. 258, 263-64, 634 S.E.2d 675, 679 (2006). Inherent in the power to prosecute is the broad discretion to decide whether to prosecute a particular offense or not, and whether to settle cases with defendants or proceed to trial. *Barrett v. Commonwealth,* 268 Va. 170, 178, 597 S.E.2d 104, 107-08 (2004). "[T]he institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion." *Bradshaw v. Commonwealth,* 228 Va. 484, 492, 323 S.E.2d 567, 572 (1984). However, broad prosecutorial discretion is not without limits. For example,

discretion cannot be exercised in an arbitrary, discriminatory, or malicious manner.

Va. Code § 46.2-819.1 clearly identifies the conduct constituting a violation of law, the applicable penalties, and the procedures by which violation claims are made and adjudicated. As such, there is no improper delegation of legislative authority. MWAA is authorized by law to exercise prosecutorial discretion, and there is no claim that it has done so in an arbitrary, discriminatory, or malicious manner. Mrs. Hagarty's claim of unconstitutional delegation of prosecutorial discretion fails.

D. *Substantive Due Process*

Mrs. Hagerty claims that the statutory scheme violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it makes the owner of a vehicle liable for the conduct of others who may drive the owner's vehicle without paying the required toll. (Motion To Dismiss at 19.) Mrs. Hagerty further claims a due process violation because the statute fails to excuse drivers whose toll payments are not recorded due to technological failure of the electronic toll payment equipment or other account payment errors. These claims fail because Mrs. Hagerty lacks standing to raise them.

If a person's conduct:

> was not constitutionally protected and was clearly proscribed by the language of the statute, he has no standing to mount a facial challenge charging that the statute could be unconstitutional if applied to other conduct of other people under other circumstances. A person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. Constitutional rights are personal and may not be asserted vicariously. These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.

*Stanley v. Norfolk*, 218 Va. 504, 506, 237 S.E.2d 799, 800-801 (1977) (citing *United States v. Raines*, 362 U.S. 17, 20-22, 80 S. Ct. 519, 4 L. Ed. 2d 524 (1960); *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)) (internal quotes, citations, and edits omitted).

Mrs. Hagerty raises her substantive due process claims in a pretrial Motion To Dismiss. The Court has not received a proffer or any evidence to suggest that Mrs. Hagerty was merely the owner and not the driver of the vehicle involved in these toll violations, or that the failure to pay the tolls

were the result of a technological failure of the toll payment equipment or an account payment error. Until such evidence is presented, Mrs. Hagarty lacks standing to claim that Va. Code § 46.2-819 violates due process. The Court, therefore, does not reach the merits of these claims.

## Conclusion

For the reasons stated during the hearing and in this letter opinion, Mrs. Hagarty's Motion To Dismiss is denied.

### March 28, 2016

The Court is in receipt of the Defendant's Motion To Reconsider The Court's Ruling Whether The Dulles Toll Road Toll Enforcement Scheme Violates The Due Process and Excessive Fines Clauses Of The U.S. Constitution, regarding the Court's February 22, 2016, decision denying Mrs. Hagarty's pretrial Motion To Dismiss, in which the Court held that the penalties authorized by Va. Code § 46.2-819.1 do not violate the Due Process Clause of the Fourteenth Amendment nor the Excessive Fines Clause of the Virginia Constitution. For the reasons that follow, the Motion To Reconsider is denied.

In her Motion To Dismiss, Mrs. Hagarty's excessive fines claim was brought solely under Article 1, Section 9, of the Virginia Constitution, not the Eighth Amendment to the United States Constitution. (Motion To Dismiss at 14-16.) Mrs. Hagarty relied upon cases applying the Eighth Amendment because of its shared text and history with Article 1, Section 9. Her claim, however, was brought only under the Virginia Constitution. For the first time, in her Motion To Reconsider, Mrs. Hagarty asks this Court to hold that the Excessive Fines Clause of the Eighth Amendment is applicable to the States and that Va. Code § 46.2-819.1 violates that provision. Assuming, without deciding, that the Eighth Amendment Excessive Fines Clause is applicable to the States, the analysis and the result are the same. *Southern Exp. Co. v. Commonwealth,* 92 Va. 59, 22 S.E. 809 (1895), applying Article 1, Section 9, and *United States v. Bajakajian,* 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998), applying the Eighth Amendment, both employ identical principles in their analyses and thus yield the same result. For the reasons stated in the Court's letter opinion of February 22, 2016, Va. Code § 46.2-819.1 does not violate either the Excessive Fines Clause of the Eighth Amendment to the United States Constitution or Article 1, Section 9, of the Virginia Constitution.

Mrs. Hagarty further requests that the Court reconsider its decision in light of *BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). The Court did not address this case in its letter opinion because Mrs. Hagarty did not make a single reference to this case in her brief in support of her Motion To Dismiss. The Court has fully

considered that case and finds that it is inapplicable because the penalties sought to be imposed on Mrs. Hagarty are not punitive damages imposed at the discretion of a judge or jury. Instead, the applicable penalties are set by the Legislature in a duly enacted statute.

In *BMW of North Am., Inc.*, the Supreme Court of the United States set aside punitive damages of $2,000,000 assessed by a jury that also awarded $4,000 in compensatory damages for BMW's failure to disclose to a buyer that the new car he purchased had been repaired after incurring cosmetic damage during shipping. The jury's original punitive damages assessment of $4,000,000 was reduced to $2,000,000 by the Alabama Supreme Court. *Id.* at 565-67. The Supreme Court of the United States found that the punitive damages were "grossly excessive" and thus violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 568. The Supreme Court explained that:

> Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose. Three guideposts, each of which indicates that BMW did not receive adequate notice of the magnitude of the sanction that Alabama might impose for adhering to the nondisclosure policy adopted in 1983, lead us to the conclusion that the $2 million award against BMW is grossly excessive: the degree of reprehensibility of the nondisclosure; the disparity between the harm or potential harm suffered by Dr. Gore and his punitive damages award [the ratio]; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases.

*Id.* at 574-75.

This Due Process analysis applies only to an award of punitive damages by a judge or jury, not to the imposition of penalties imposed pursuant to a statute enacted by the Legislature. The analysis is used to assure that a defendant ordered to pay punitive damages had fair notice that her conduct would subject her to penalty, and fair notice as to the amount that could be imposed. This analysis is necessary when punitive damages are awarded at the discretion of a judge or jury, rather than pursuant to a specific statute that identifies the prohibited conduct and the potential penalties. Unlike *BMW,* Mrs. Hagarty had constitutionally adequate notice because the penalties she faced for driving on the Dulles Toll Road without paying the applicable toll were clearly stated in a statute enacted by the Legislature. Although the factors considered in BMW are similar to those applied in the *Southern Exp. Co.* and *Bajakajian,* the *BMW* Due Process analysis is unnecessary when penalties are imposed pursuant to a statute.

It is also inappropriate to apply the *BMW* analysis because that case does not afford the deference due to legislative enactments. Both *Southern Exp. Co.* and *Bajakajian* are predicated on the principle that judgments about the appropriate punishment for an offense belong in the first instance to the Legislature. Both cases next recognize that "judicial determination[s] regarding the gravity of a particular criminal offense will be inherently imprecise. Both of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense." *United States v. Bajakajian*, 524 U.S. at 336; *see Southern Exp. Co. v. Commonwealth*, 92 Va. at 66, 22 S.E. at 811. Thus, great deference is afforded to the judgment of the People's elected representatives regarding the proper penalties for prohibited conduct. Those representatives, who remain accountable to the People via the ballot, can modify those penalties as needed by legislative amendments. Punitive damages assessed by judges and juries — who are not so easily held accountable — do not enjoy that same level of deference; accordingly, the *BMW* factors are not deferential. To give due deference to the judgment of the elected Legislature, this Court must apply *Southern Exp. Co.* and *Bajakajian,* rather than *BMW.* As such, the Court finds that the penalties sought to be imposed on Mrs. Hagerty do not violate any provision of the Virginia or United States Constitutions.

In her Motion To Dismiss, Mrs. Hagarty's Fourteenth Amendment Due Process claims were not directed at the amount of the penalties. In her Motion To Reconsider, *BMW* is raised in support of Mrs. Hagarty's Eighth Amendment Excessive Fines claim, although that case does not apply the Eighth Amendment. To the extent that Mrs. Hagarty is raising a Fourteenth Amendment Due Process claim with respect to the amount of the penalties, it is denied.

Mrs. Hagarty further argues that the "approximately $81,325.00 in penalties and fees MWAA seeks for the approximately $236.25 in claimed tolls should shock the conscience of the Court as grossly disproportionate." (Motion To Reconsider at 2.) The total amount of these penalties and fees for the 158 separate violations is, undoubtedly, a substantial figure. However, the Court rejects the notion that the Court should determine whether the penalties are constitutionally permissible based upon an aggregation of the penalties. The reason for this is simple. A penalty that is significant but not unconstitutionally excessive does not become so because the offender may have committed the offense more than 150 times. To adopt such reasoning would have the perverse effect of saving the scofflaw while penalizing the penitent. Rather, whether a penalty for proscribed conduct is constitutionally excessive must be determined based upon the amount of the penalty and whether it bears some relationship to the gravity of the offense for which it is imposed. *United States v. Bajakajian*, 524 U.S. at 334. Each offense and penalty must be evaluated individually and not in

the aggregate. When so viewed, the penalties imposed by Va. Code § 46.2-819.1 are not unconstitutional.

Mrs. Hagarty argues that the Court's ruling "suggest[s] no limiting principle to the power of government to impose pecuniary penalties favoring third parties for trivial amounts in tolls" and thus "renders meaningless the Due Process and Excessive Fines Clauses of the U.S. Constitution and the inherent scheme of checks and balances." (Motion To Reconsider at 3-4.) She is, of course, incorrect. The limiting principle exists and has been stated with as much precision over the centuries that the English language will permit. Rather than that no limiting principle exists, Mrs. Hagarty's true complaint appears to be that the limiting principle of proportionality is inherently imprecise and too deferential to the Legislature. This criticism notwithstanding, our system of checks and balances — which includes an appreciation of the proper role of the judicial branch in reviewing the acts of the political branches — compels the outcome in this case. The ultimate limit on the government's power to levy fines that the People find to be excessive rests with the People, which they are free to wield publicly by petitioning their elected representatives, or privately in the voting booth.

For the foregoing reasons, the Defendant's Motion To Reconsider is denied.